Rafael SARMIENTO et al., Appellants,

v.

CITY OF CORPUS CHRISTI, Appellee.

No. 592.

Court of Civil Appeals of Texas, Corpus Christi.

March 25, 1971.

Allison, Maddin, White & Brin, Harry F. Maddin, Raul Garcia, Corpus Christi, for appellants.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, B. Mills Latham, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a summary judgment case. Rafael Sarmiento, individually and as next friend of Rosie Sarmiento, a minor, and Zulema DeLeon, individually and as next friend of Cindy DeLeon, a minor, as plaintiffs, sued the City of Corpus Christi and Otilia Benavides, as defendants, for personal injuries sustained by the minors occasioned when the minors were struck by a motor vehicle at or near the intersection of 19th and Morgan Streets, in the City of Corpus Christi. The defendant City of Corpus Christi invoked the defense of governmental immunity and filed a Motion for Summary Judgment The trial court sever-

ed the causes of action asserted against the above named defendants and granted the City's Motion for Summary Judgment. Plaintiffs have appealed. The defendant Otilia Benavides is not a party to this appeal. The parties will be referred to here as they were in the trial court.

Plaintiffs alleged that on May 9, 1969, the above-named minors were walking home from a school and had arrived at the corner of 19th and Morgan Streets, and were preparing to cross Morgan Street under the direction and supervision of Otilia Benavides, an employee of the City of Corpus Christi. They further allege that while under the supervision and control of Otilia Benavides the minors were instructed by her to proceed across Morgan Street at a time when it was not safe to do so, and while doing so were struck by a vehicle passing through the intersection, injuring the minors. Plaintiffs plead that Otilia Benavides was acting as a crossing guard in the scope of her employment for the City of Corpus Christi, that she was negligent, and that her acts of negligence were each and all a proximate cause of the injuries sustained by the minors.

Defendant's Motion for Summary Judgment incorporated therein the pleadings of the parties, the affidavit of Captain W. L. Baskett, a Captain in the Police Department of the City of Corpus Christi, the deposition of Captain Baskett, and the deposition of Otilia Benavides.

Plaintiffs' single point of error reads as follows: "The trial court erred in granting Appellee's Motion for Summary Judgment because the defense of governmental immunity is not a bar or defense to the cause of action asserted by Appellants".

The pleadings, affidavit and depositions show conclusively that there is no dispute as to any material fact (except, of course, as to the amount of damages). The sole question for our determination is: Was Otilia Benavides, an employee of the defendant city, at the time, place and date of the injuries sustained by the minors, per-

forming duties in the furtherance of a governmental function?

Plaintiffs contend that Otilia Benavides at the time, place and date of the occurrence, was involved in a proprietary function. They particularly argue that such acts and services are not required by any statute of the State of Texas nor by any ordinance of the City of Corpus Christi, but that they were voluntarily assumed by the Police Department of the City primarily for the benefit of the citizens of the City of Corpus Christi, and not for the benefit of the public at large. Under no circumstances, say plaintiffs, is the hiring of school crossing guards and the duties performed by them to be considered "in the furtherance of the general law for the interest of the public at large". Finally, plaintiffs assert that Otilia Benavides was not a police officer and that there is a distinction between acts and duties of school crossing guards and acts and duties of police officers that denominate the function performed by the former proprietary and the function performed by the latter governmental.

Defendant contends that Otilia Benavides at the time, place and date of the occurrence, was involved in a governmental function and that the City of Corpus Christi is protected by the doctrine of governmental immunity, whether or not she was negligent in the performance of her duties. The affidavit and depositions establish that the primary duty of a school crossing guard consists of the control and direction of vehicular and pedestrian traffic at a fixed post for the protection of pedestrian traffic in a school zone or at a school crossing. A school crossing guard has other duties to perform, such as the observation and reporting of traffic violations, appearance in Corporation Court as a witness for the purpose of giving testimony regarding traffic violations observed, and the teaching of bicycle and pedestrian safety to school children.

The courts of this State have long ago laid down the rules for determining

whether a particular municipal activity is governmental or proprietary It is well settled that activities which are carried on by a city, pursuant to state requirement, in discharge of the state's obligation for the health, safety or general welfare of the public generally, or which are voluntarily assumed by the city for the benefit of the public generally rather than for its own citizens, are performed in a governmental capacity and as a governmental function. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259 (1944); City of Tyler v. Ingram, 139 Tex. 600, 164 S.W.2d 516 (1942); City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872 (1937); Gartman v. City of McAllen, 130 Tex. 237, 107 S.W.2d 879 (1937); City of Fort Worth v. George, 108 S.W.2d 929 (Tex.Civ.App., Fort Worth 1937, wr. ref.).

■ When performing a governmental function, a city, except in those situations within the purview of Article 6252–19, Vernon's Ann.Civ.St., effective January 1, 1970, commonly called the Tort Claims Act (which is not involved in this case), is not responsible for the torts of its employees, agents or officials. Scroggins v. City of Harlingen, 131 Tex. 237, 112 S.W.2d 1035 (1938); City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965 (1932); City of Fort Worth v. Wiggins, 5 S.W.2d 761 (Tex.Com.App.1928); Meska v. City of Dallas, 429 S.W.2d 223 (Tex. Civ.App., Dallas 1968, wr. ref.); Luvaul v. City of Eagle Pass, 408 S.W.2d 149 (Tex. Civ.App., Corpus Christi 1966, wr. ref. n. r. e.).

■ The rule of immunity from tort liability of a city in the exercise of governmental functions extends to discretionary powers, and generally there is no liability for damages resulting either from the failure to exercise, the manner of exercising, or errors of judgment in exercising, such discretionary powers. City of Waco v. Darnell, 35 S.W.2d 134 (Tex.Com.App. 1931).

It was stated in City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57, 60 (1931):

" * * * the rule is recognized that a municipality is exempt from liability when it performs a duty imposed upon it as the arm or agent of the state in the exercise of a strictly governmental function solely for the public benefit. That the exemption of a governmental agency from liability pertains only to those acts or functions which are performed as the agent of the state in furtherance of general law for the interest of the public at large, as distinguished from those acts and functions intended primarily for the benefit of those within the corporate limits of a municipality. * * * "

The above rule is well settled. It is in its application to a particular fact situation that the difficulty arises.

■ Proprietary functions are functions which the city, in its discretion, may perform when considered to be for the best interest of the citizens of the city. In the performance of proprietary functions, the city is liable for the torts of its employees, agents and officials in the same manner and to the same extent as are individuals or private corporations. Crow v. City of San Antonio, 157 Tex. 250, 301 S.W.2d 628 (1957); City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326 (1955); City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010 (1951); Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 992 (1949); City of Galveston v. Posnainsky, 62 Tex. 118 (1884); Jones v. City of Texarkana, 100 S.W.2d 198 (Tex.Civ.App., Texarkana 1936, wr. dism.).

■ Municipalities have the right, under the police power, reasonably to control and regulate the use of their streets, and this, including traffic regulation, is a governmental function. City of Austin v. Daniels, 160 Tex. 628, 335 S.W.2d 753, 81 A.L.R.2d 1180 (1960), and the authorities cited therein. The use of traffic control lights by a

city in the regulation and control of traffic on its streets is a governmental function as a reasonable exercise of police power. Voigt v. City of Corpus Christi, 419 S.W.2d 445 (Tex.Civ.App., Corpus Christi 1967, wr. ref. n. r. e.), and the cases cited in the opinion; Glover v. City of South Houston, 424 S.W.2d 723 (Tex.Civ.App., Houston 14th 1968, n. w. h.); Burchett v. City of Stanton, 262 S.W.2d 952 (Tex. Civ. App., El Paso 1953, n. w. h.). A city may, in the exercise of its police power to regulate traffic on its streets, regulate and prohibit parking thereon. City of Abilene v. Woodlock, 282 S.W.2d 736 (Tex. Civ.App., Eastland 1955, wr. ref.). The case of Harper v. City of Wichita Falls, 105 S.W.2d 743 (Tex.Civ.App., Fort Worth, 1937, wr. ref.) upholds the power of a city, under its police power, to install and operate parking meters as bearing a reasonable relationship to the regulation of traffic. See also Harrison County v. City of Marshall, 253 S.W.2d 67 (Tex.Civ.App., Fort Worth 1952, wr. ref.); Park v. Adams, 289 S.W.2d 829 (Tex.Civ.App., Waco 1956, n. w. h.). We are of opinion that the activity of an employee of a city in directing traffic at a street intersection is analogous to the activity of a traffic signal light. Both are functions in the furtherance of a governmental function by the direction and control of vehicular and pedestrian traffic. No case has been cited to us involving a school crossing guard and none has been found by us. However, we perceive no legal reason why the law as applied in the traffic signal light, parking meter and parking cases should not be applied in a school guard case.

▌ In seeking the test in determining whether the activity involved in the case at bar is in the furtherance of a governmental or proprietary function, we are impressed by the following excerpt from City of Fort Worth v. George, supra, where on page 932 of 108 S.W.2d, it is said:

"* * * If an act be one which in fact does inure to the benefit of the general public, we cannot exclude the special benefits that come to those residing within the corporate limits, for the reason they are as much a component part of the general public as are those on the outside. * * *"

We apply that test here. Cities, in the regulation and control of traffic along, over and across its streets, are acting for all the people and not primarily for the benefit of those residing within its corporate limits. In matters pertaining to traffic, cities are not left free to make and enforce such regulations as they deem best for the residents of the municipality to the exclusion of non-residents. Any such regulation must not be discriminatory and must extend to and include the public generally, residents and non-residents alike.

▌ In Treadaway v. Whitney Independent School District, 205 S.W.2d 97 (Tex.Civ.App., Waco 1947, n. w. h.), plaintiff sued to recover damages for injuries sustained in an accident which he alleged was the result of negligence on the part of a school bus driver, an employee of the school district. Defendant defended by pleading governmental immunity. Plaintiff asserted that the function was proprietary in that the school was maintained primarily for the benefit of the inhabitants of the district. The Court of Civil Appeals sustained the school district and made these comments:

"Just because the services rendered in this respect are performed within the limits of the city does not make such functions local in nature but their effect and importance are statewide and are performed for the benefit of all the people. * * *"

and,

"The public at large is just as much interested in the welfare of the students after they reach the schoolhouse as it is in seeing them safely transported to and from school, not only the students in this particular district but all the students throughout the state of Texas. * * *"

The same reasoning is applicable to this case. The principal duty of Otilia Benavides was to direct and control traffic, both pedestrian and vehicular, along, over and across public streets of Corpus Christi in and near school zones. On May 9, 1969, when the accident occurred, she was on duty at her assigned post, the intersection of 19th and Morgan Streets. Care should be exercised so as not to confuse the nature of the function itself with the mechanics of the duties required or with the goal of the activity. Clearly, the function was control and direction of traffic at street intersections; the mechanics of the duties required signals to be given to the drivers of vehicles and to pedestrians; the goal of the activity was to aid and assist school children in crossing the streets. Therefore, at the time of the occurrence, the City of Corpus Christi was charged by law with the control and direction of traffic at this intersection, clearly a governmental function. The mechanics of the function were performed by Otilia Benavides, an employee of the City, in the furtherance of an activity in the interest of the public at large as distinguished from the interest primarily of only those living within the corporate limits of the City itself. Consequently, the City, being then engaged in the performance of a governmental function, is not required to respond in damages for the negligence, if any, of Otilia Benavides.

Plaintiffs lay great stress on the fact that there is neither a statute of the State of Texas nor an ordinance of the City of Corpus Christi that requires the hiring of a school crossing guard. This contention is fully answered by several of the foregoing cases, particularly City of Fort Worth v. George, supra, where the two tests are given in detail for use in determining whether a given function of a city is governmental or proprietary. One of the tests in making this determination is that, as contended by plaintiffs, the activity must be imposed by law; the other is that the objective to be obtained must be for the use and benefit of the general public and not primarily for the benefit of just the inhabitants of the city. Here, both tests are met. First, the City is required by law to control and regulate traffic along its streets; second, the control and regulation of traffic at the street intersection in question was in the interest of the public generally and not primarily for the benefit of the citizens of Corpus Christi. While it may be true that the inhabitants of the City derive the greatest benefit from the use of school crossing guards since more of their children are involved than are non-resident children, that is not the issue in this case. The general public of the State of Texas is served by the protection of and aid and assistance to school children in their crossing public streets, regardless of whether they are residents of the City or not, and irrespective of whether they be enrolled in any city school or not. Plaintiffs' position cannot be sustained. The fact that the hiring of school crossing guards is not enjoined upon the City of Corpus Christi by either state law or local ordinance does not make the activity of a school crossing guard a proprietary function of the City.

Plaintiffs also urge that the City of Corpus Christi, in voluntarily assuming the responsibility of hiring crossing guards, became liable for the negligence of such employee. We are not here concerned with the activity of hiring crossing guards; the activity presented by the record before us is the direction and control of traffic, primarily pedestrian, on a public street by a person who, admittedly, is an employee of the City, and who further, admittedly, was actually directing traffic at her assigned post when the accident happened. Plaintiffs' argument is without merit.

Plaintiffs further say that Otilia Benavides was not classified or designated as a police officer and that this constitutes her acts proprietary rather than governmental. Particular mention is made that she did not have the power to issue tickets for traffic violations or to make arrests. Whether she was classified as a police of-

ficer or a school crossing guard is immaterial in determining whether she was engaged in a governmental function or not. Our authority is found in City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965 (1932), where it is said:

"It is true that, when an employee of a city is injured, the fact that he is employed as a member of a department charged with the duty of performing a governmental function is not of itself determinative of the question of the liability of the city for injuries received by him through the negligence of the officers of said city. The question of the city's liability for such injuries must be determined, not by the particular department in which he is employed, but turns rather upon the question as to whether the nature of the work being done by him comes within the purview of the performances of a governmental function by the city."

Plaintiffs also reason that a school crossing guard should be placed in the same category as a lifeguard at a public swimming pool. We do not agree. The operation and maintenance of a public swimming pool is clearly a proprietary function primarily for the enjoyment and benefit of the citizens of the municipality and is not analogous to the regulating, directing or controlling vehicular and pedestrian traffic on a public street.

Finally, plaintiffs argue that the doctrine of governmental immunity is morally and judicially wrong. It is suggested that this Court should abrogate this doctrine. Such is not the province of an intermediate appellate court. We do not believe it a part of our function to undertake to change a rule so long established by our Supreme Court. Meska v. City of Dallas, supra; Mayes v. City of Wichita Falls, 403 S.W. 2d 852 (Tex.Civ.App., Fort Worth 1966, wr. ref. n. r. e.). Plaintiffs' point of error is overruled.

The judgment of the trial court is affirmed.