**CITY OF MISSION, Appellant,**

**v.**

**Veronica Garza CANTU, Angelica Sifuentes, Reynaldo Alvarado and Silvia Alvarado, Individually and as Representative of the Estate of Neria N. Alvarado, Deceased, et al., Appellees.**

**No. 13–01–00786–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Oct. 24, 2002.

Rehearing Overruled Nov. 21, 2002.

Mark Sossi, McAllen, for Appellant.

John H. Eaton, Eaton & Associates, McAllen, Peter Ferraro, Austin, Rene Segundo, McAllen, Ruben R. Pena, Law Offices of Ruben R. Pena, P.C., Harlingen, William B. Harrison, Corpus Christi, Robert A. Allen, Allen Stein Powers Durbin & Hunnicut, San Antonio, for Appellees.

Before Justices HINOJOSA, CASTILLO and CHAVEZ.[1]

## OPINION

Opinion by Justice CASTILLO.

The City of Mission presents an interlocutory appeal from the denial of a plea to the jurisdiction.[2] In two issues, the City argues that the trial court improperly denied its plea to the jurisdiction because the Texas Tort Claims Act does not waive sovereign immunity for a municipality's allegedly negligent design of a city road. We reverse and render.

## FACTUAL BACKGROUND

Veronica Garza Cantu and several friends were traveling south on Glasscock Road, a two-lane road. In front of the County Estates subdivision, the road widens from forty to sixty feet in width. At the end of the subdivision, the road returns to its original forty-foot width. No particular markings denote either the expansion of the road or its return to its original dimensions. Near this area, Cantu, the driver, while traveling southbound, attempted to pass another vehicle, driven by Robert Treviño, traveling in the same direction. At that point the road returned to its normal forty-foot width. Unable to overtake Treviño's vehicle traveling parallel to hers and seeing an approaching northbound vehicle, Cantu attempted to return to the southbound lane. In doing so, she lost control of her vehicle, left the road, and came to a stop after colliding with a tree. Two passengers in her car were killed, and the others were injured.

Suit was filed by Yvonne Cantu, Angelica Sifuentes, Reynaldo Alvarado, and Silvia Alvarado, individually and on behalf of the estate of Neria N. Alvarado, deceased, against the City of Mission and other private defendants.[3] A petition in intervention was filed by Jose Guadalupe Aguirre, individually and as representative of the estate of Maria G. Aguirre, deceased, and Maria Luisa Lopez Aguirre, individually. Both the plaintiffs and the intervenors (hereinafter referred to jointly as "appellees") asserted in their petitions that the change in the width of the roadway without any road sign or warning device was a dangerous condition constituting a special defect for which they alleged the City was liable by virtue of failing to warn or make reasonably safe. They also alleged the City failed to properly construct and design the relevant portion of road, specifically by not having proper barriers, signs, or warning devices and by failing to place warning signs and traffic control devices listed in the 1980 Texas Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD"). The City filed a plea to the jurisdiction as to both the plaintiffs' petition and the intervenors' petition, asserting sovereign immunity under the provisions of the Texas Tort

1. Retired Justice Melchor Chavez assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

2. We have jurisdiction over this interlocutory appeal pursuant to section 51.014(a)(8) of the civil practice and remedies code, which provides that an appeal may be taken from an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in section 101.001 of the same code. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2002). It is undisputed that the city of Mission is such a governmental unit. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (Vernon Supp. 2002) (a city is a governmental unit under the Texas Tort Claims Act). The appeal is accelerated pursuant to rule of appellate procedure 28.1. See TEX.R.APP. P. 28.1.

3. The other defendants are not parties to this appeal.

Claims Act.[4] The trial court denied the plea, and this appeal ensued.

## STANDARD OF REVIEW

 This appeal is strictly limited to our review of the trial court's ruling on the plea to the jurisdiction. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2002). The appellees bear the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear this case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Mission Consol. Indep. Sch. Dist. v. Flores*, 39 S.W.3d 674, 676 (Tex.App.-Corpus Christi 2001, no pet.). "Subject matter jurisdiction is never presumed and cannot be waived." *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44. Since a governmental unit is protected from suit by sovereign immunity, pleadings in a suit against a governmental unit must affirmatively demonstrate, either by reference to a statute or express legislative permission, that the legislature consented to the suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). Absent the government's consent to suit, the trial court has no jurisdiction. *Id.*

On appeal, because the question of subject matter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). To determine whether appellees have affirmatively demonstrated the court's jurisdic-

tion to hear the case, we consider the facts alleged in the petitions, and to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties to the trial court, if any. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Our task is not to decide the merits of the case but rather to examine the petitions, taking as true the facts pled,[5] and determine whether those facts support jurisdiction in the trial court. *Baston v. City of Port Isabel*, 49 S.W.3d 425, 427–28 (Tex.App.-Corpus Christi 2001, pet. denied).

 We must construe the pleadings in the plaintiff's favor and look to the pleader's intent. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002); *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989). If a plaintiff pleads facts that affirmatively demonstrate an absence of jurisdiction and such defect is incurable, then the cause is properly dismissed. *Peek*, 779 S.W.2d at 804–05; *City of Austin v. L.S. Ranch*, 970 S.W.2d 750, 753 (Tex.App.-Austin 1998, no pet.). However, the mere failure of a petition to state a cause of action does not show a want of jurisdiction in the court. *Bybee v. Fireman's Fund Ins. Co.*, 160 Tex. 429, 331 S.W.2d 910, 917 (1960). If the plaintiff's pleadings are insufficient to demonstrate the court's jurisdiction, but do not affirmatively show incurable defects in jurisdic-

---

**4.** TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp.2002).

**5.** We must take all factual allegations pled as true, unless the defendant pleads and proves that the allegations were fraudulently made in order to confer jurisdiction. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex.1996). In the present case, the City asserted falsity in the pleadings but its assertions did not go to appellees' description of

the facts made the basis of the claims but rather to the characterization of the nature of the claims averred. The City submitted evidence to the trial court on the question of jurisdiction, which purportedly clarified the true nature of appellees' claims. We will review such evidence to the extent relevant to the jurisdiction as permitted by the decision in *Bland*. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000).

tion, the proper remedy is to allow the plaintiff an opportunity to amend before dismissal. *Brown,* 80 S.W.3d at 555; *Peek,* 779 S.W.2d at 805.

## ISSUES PRESENTED

In the present case, the City asserts that it is entitled to sovereign immunity as to appellees' claims. Specifically, the City claims that the trial court erred in denying the plea to the jurisdiction because: (1) governmental immunity barred appellees' claims and had not been waived by the Texas Tort Claims Act; and (2) the trial court had no jurisdiction over a claim against it for personal injury damages allegedly caused by the design of a city road. As we have noted, both issues raise the same basic argument: the trial court erred in denying the plea to the jurisdiction because sovereign immunity is not waived under the Texas Tort Claims act for negligent design of a roadway, including the decision whether to equip the roadway with certain warning devices or signs. Hence, we will consider these two issues as one question, which we will review in the course of determining whether appellees have stated a claim over which the trial court in the instant case had jurisdiction.

## THE TEXAS TORT CLAIMS ACT AND WAIVER OF SOVEREIGN IMMUNITY FOR MUNICIPALITIES

■■■ As a general rule, government entities are immune from tort liability under the doctrine of sovereign immunity unless the legislature has waived immunity. *Dallas Co. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998). Sovereign immunity extends to municipalities when they are carrying out governmental functions. *City of*

*Galveston v. Posnainsky,* 62 Tex. 118, 127 (1884). Municipalities, then, are immune from tort liability under the doctrine of sovereign immunity for governmental functions unless such immunity is specifically waived.[6] *City of La Porte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995).

The Texas Tort Claims Act ("the Act") provides a limited waiver of the sovereign immunity of governmental units, allowing them to be held liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the government unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997).

■■■ Although the Act speaks in terms of waiver of immunity from liability, it also waives immunity from suit to the same extent. *Tex. Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001) (citing TEX. CIV. PRAC. & REM.CODE ANN. § 101.025(a) (Vernon 1997)) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). However, the mere invocation of the Act in a petition does not in itself

---

**6.** Proprietary functions are not covered by the doctrine of sovereign immunity, and a municipality may be held liable for claims related to

these functions. *City of Round Rock v. Smith,* 687 S.W.2d 300, 302 (Tex.1985); *City of Galveston v. Posnainsky,* 62 Tex. 118, 127 (1884).

waive sovereign immunity and confer jurisdiction on the trial court. *Id.* Rather, the claim raised must fall within the specific scope of the waiver of immunity provided by the Act and so affirmatively demonstrate the trial court's jurisdiction to hear the case. *Id.*

The first question that must be considered then, in the case of municipalities, is whether the claimed tort action arises from a governmental function, to which the Act applies, or a proprietary function that is not covered by the Act. *Dalon v. City of De Soto,* 852 S.W.2d 530, 535 (Tex.App.-Dallas 1992, writ denied). For this determination, the Act provides section 101.0215. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215 (Vernon Supp.2002). This section states that a "municipality is liable under this chapter for damages arising from its governmental functions" and goes on to delineate a non-exclusive list of governmental functions. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(1)–(36) (Vernon Supp.2002). It also explicitly states

that "[t]his chapter" does not apply to liability for damages arising from a municipality's proprietary functions, again providing a non-exclusive list of the same and then specifying that the activities listed under subsection (a) are not to be considered proprietary. TEX. CIV. PRAC. & REM. CODE ANN. 101.0215(b), (c) (Vernon Supp. 2002). Section 101.0215 does not itself operate as an independent waiver of sovereign immunity but, rather, brings certain municipal functions, which would normally be clothed with sovereign immunity, within the purview of the Texas Tort Claims Act, thus subjecting municipalities to liability for claims arising from such functions if the claims fall within the areas of liability provided by section 101.021 of the Act.[7] *Bellnoa v. City of Austin,* 894 S.W.2d 821, 826 (Tex.App.-Austin 1995, no writ); *Alvarado v. City of Brownsville,* 865 S.W.2d 148, 155 (Tex.App.-Corpus Christi 1993), *rev'd on other grounds,* 897 S.W.2d 750 (Tex.1995);[8] *McKinney v. City of Gaines-*

---

**7.** For an extensive discussion of the relationship between sections 101.0214 and 101.021, see *Bellnoa v. City of Austin,* 894 S.W.2d 821, 826 (Tex.App.-Austin 1995, no writ); *McKinney v. City of Gainesville,* 814 S.W.2d 862, 865 (Tex.App.-Fort Worth 1991, no writ) and Montford, J. & Barber, W., *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System,* 25 Hous. L.Rev. 59, 121 (1988).

**8.** Section 101.025 of the Texas Tort Claims Act waives sovereign immunity to suit to the extent that liability is created "by this chapter." TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon 1997). Liability is created under the Act in section 101.021 which delineates the three areas for which governmental units may be held liable, to wit: (1) property damages, personal injury and death proximately caused by a government employee's wrongful act, omission or negligent use of a motor-driven vehicle or equipment, TEX. CIV PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1997); (2) personal injury and death caused by the condition or use of tangible personal property, TEX. CIV. PRAC. & REM.CODE ANN.

§ 101.021(2) (Vernon 1997); and (3) personal injury and death caused by the condition or use of real property, TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). *City of Houston v. Rushing,* 7 S.W.3d 909, 914 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) (en banc). As to this last category of liability, the Act further explicates that there are two types of conditions of real property for which governmental liability is recognized and to which different duties attach, namely premise defects and special defects. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022 (Vernon 1997). Thus, although sometimes sections 101.022 is cited as establishing an area of liability for which sovereign immunity is waived, *e.g. Alvarado v. City of Brownsville,* 865 S.W.2d 148, 155 (Tex.App.-Corpus Christi 1993), *rev'd on other grounds,* 897 S.W.2d 750 (Tex.1995), it is, in fact, only descriptive of the duties of care owed by the governmental unit for the liability set out in section 101.021(2) for the condition of real property. *See DeWitt v. Harris County,* 904 S.W.2d 650, 653 (Tex.1995) (discussing the relationship between section 101.021 and 101.022); compare also the in-

*ville,* 814 S.W.2d 862, 865 (Tex.App.-Fort Worth 1991, no writ).

Thus, even though it is established that a claim arises from a governmental function listed in section 101.0215 and the Act applies, the claim made must still fall within the scope of section 101.021 in order for a municipality to be held liable.[9] *City of Midland v. Sullivan,* 33 S.W.3d 1, 7 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.); *City of El Paso v. Hernandez,* 16 S.W.3d 409, 414 (Tex.App.-El Paso 2000, pet. denied); *City of Houston v. Rushing,* 7 S.W.3d 909, 914 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (en banc); *Bellnoa,* 894 S.W.2d at 826; *Alvarado,* 865 S.W.2d at 155. However, even if the claim meets this requirement, waiver of sovereign immunity is not yet established. The legislature has also provided a number of exclusions and exceptions to the waiver of sovereign immunity, which serve to preserve sovereign immunity even when the claimed action falls within the scope of section 101.021. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.051–101.066 (Vernon 1997 & Supp.2002) (listed in subchapter C of the Act which is titled, "Exclusions and Exceptions"). Where such exceptions or exclusions to the Act apply, sovereign immunity is not waived. *Id.; see Delaney v. Univ. of Houston,* 835 S.W.2d 56, 58 (Tex.1992) (even if immunity waived under section 101.021, suit still prohibited if claim falls under exception); *Fernandez v. City of El Paso,* 876 S.W.2d 370, 375–376 (Tex.App.-El Paso 1993, writ denied) (exceptions to waiver of sovereign immunity effectively reinstate sovereign immunity where applicable); *see also Alvarado,* 865 S.W.2d at 155 (Act contains several exceptions to waiver of immunity which limit liability, and analysis of liability must include determining whether claim falls within such exceptions).

■ Therefore, if a plaintiff fails to state a claim that falls within the scope of section 101.021, or if the claim stated falls within an exception to the application of the Act, then sovereign immunity is not waived as to that claim, and the question of negligence cannot be determined by the trial court. *Alvarado,* 865 S.W.2d at 155.

■ In the present case, appellees, in their respective petitions, have cited no other statutory or legislative authority providing for the waiver of sovereign immunity apart from the Texas Tort Claims Act. Likewise, appellees do not assert that the City was engaged in a proprietary function, but specifically invoke section 101.0215, asserting the applicability of subsections (a)(3), (a)(4), (a)(20), (a)(21), (a)(29), and (a)(30) of that statute.[10] The City does not contest that the claims made

---

troductory language of section 101.021 ("A government unit in the state is liable for ...") and caption ("Governmental Liability") with the introductory language ("If a claim arises from a premise defect ..." and "The limitation of duty in this section ...") and caption ("Duty owed: Premise and Special Defects") of section 101.022. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021, 101.022 (Vernon 1997).

**9.** Similarly, section 101.025, while expressly waiving sovereign immunity, does so only to the extent "liability is created by this chapter," and hence a party seeking to establish jurisdiction may not simply plead a general waiver of sovereign immunity under this section but must state a claim for which liability is created under section 101.021. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021, 101.025 (Vernon 1997); *see Tex. Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001).

**10.** Both the fourth amended original petition and the first amended plea in intervention cite this section as "101.025," but since that section does not contain the subsections listed, we read this as an attempt to claim the applicability of section 101.0215 which is earlier cited in the same paragraph of the petition.

arise from governmental functions. Thus, there is no dispute by any party that the claims raised would be governed by the provisions of the Texas Tort Claims Act.

Accordingly, with the initial question of the applicability of the Act resolved, we must now determine whether appellees have stated a claim cognizable under that Act, that is, whether they have raised a claim which falls within the scope of liability recognized in section 101.021 and, if they have done so, whether any exceptions to the application of the Act apply so as to render inapplicable the waiver of immunity. *Bellnoa*, 894 S.W.2d at 826; *Alvarado*, 865 S.W.2d at 155. In doing so, we review the petition and "to the extent it is relevant to the jurisdictional issues, the evidence submitted by the parties." *White*, 46 S.W.3d at 868. We must ascertain the nature of the claim raised, examine the tort claims act to determine the scope of waiver of sovereign immunity relevant to such claim, and then consider the particular facts of the claim to decide whether it comes within that scope so as to invoke jurisdiction in the trial court. Finally, if we find that the facts of any claim before us come within the scope of a waiver, we must consider whether any of the statutory exceptions to the Act apply before we can conclusively determine whether sovereign immunity has been waived. *Alvarado*, 865 S.W.2d at 155.

## APPELLEES' CLAIMS

*The Fourth Amended Original Petition*

In their fourth amended original petition, plaintiff-appellees [11] allege that a "dangerous and hazardous condition existed upon the entire width" of the widened section of Glasscock Road which proximately caused the accident and was a substantial contributing factor to the same. Although not explicitly stating what was the "dangerous and hazardous condition" of which they complain, in other sections of the petition, appellees state that North Glasscock road "abruptly and without warning to southbound drivers, returned from a width of (60) feet to the pre-existing two lane highway having a width of forty (40) feet," and complain that "there had not been erected, nor did there exist road signs ... fog line, shoulder stripe, guard rails or other devices to warn the traveling public of the abrupt change in the width of the highway." [12]

Against the City of Mission, plaintiff-appellees specifically complain that the City was "negligent generally and in the following particulars:"

a. In causing, allowing or permitting the existence of a dangerous and hazardous condition at the location of the accident in question to exist such that an artificially widened portion of the road existed for substantial distance along North Glasscock Road;

b. In failing to properly design the improved widened portion of North Glasscock Road by not placing a barrier or proper warning devices and signs, road stripes, reflectors or other means and methods of advising the traveling public of the artificially dangerous condition and preventing the traveling vehicles from using the widened portion of the road;

c. In failing to properly construct the widened portion of the said highway in accordance with generally accepted stan-

---

11. The petition alleged the claims of Veronica Garza Cantu, Yvonne Cantu, Angelica Sifuentes, and the estate and survivors of Neria N. Alvarado.

12. There is no dispute that the portion of the road in question lies within the boundary of the City of Mission.

dards, warrants, protocols including barriers, signs, reflectors and striping to warn the traveling public of the dangerous condition;

d. In violating regulations, design manual and maintenance guidelines and warrants relative to the maintenance, signage, construction and design of roadways applicable in the State of Texas; and

e. In failing to provide a free recovery zone because of an insufficient, substandard and artificially widened highway including the failure to insure that the traveling public was properly warned of the abrupt change in the contour and width of the highway immediately south of the subdivision; in failing to construct a shoulder or other free recovery zone south of the widened portion of the highway and otherwise failing to utilize generally accepted engineering standards and protocols so as to prevent the existence and use of an artificially dangerous, unusual and unexpected condition on said highway.

Plaintiff-appellees also allege that the City had the "power and duty to exercise control over traffic and road devices along Glasscock Road in the area where the widened road exists" and further alleged that the City had actual and constructive notice and knowledge of the dangerous condition prior to the accident and failed to take remedial action to correct the dangerous condition, making it "liable under the Texas Tort Claims Act Statute, Section 101.0215." [13]

Plaintiff-appellees further allege that the condition of the road constitutes a special defect and that the City has a duty to warn of the dangerous condition or to make the condition reasonably safe. They claim in their petition that the City's immunity is waived under Texas Civil Practice and Remedies Code sections 101.022(b), 101.0215(a)(3), (a)(4), (a)(20), (a)(21), (a)(29), and (a)(30),[14] and "expressly waived" under section 101.025. Finally, plaintiff-appellees allege that the City, as well as their engineers, failed to follow the 1980 Texas Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD"), as amended, pertaining to warning signs and the placement of traffic control devices.

*First Amended Petition in Intervention*

In their intervention petition as amended, intervenor-appellees [15] likewise claimed an unspecified dangerous and hazardous condition was the proximate cause of the accident but specified that "the widened portion of said highway" was the "substantial and contributing factor" in the cause of the accident. Like the plaintiffs, the intervenors state that North Glasscock road,

13. The petition does not state any facts relating how the City allegedly had notice of the complained-of condition prior to the accident. In an earlier paragraph of the petition, appellees allege that "the aforementioned Defendants" had "actual and constructive notice of the dangerous condition during and after the construction process" due to their "construction efforts in widening" of the road. As this section immediately follows a section in which certain defendants, but not the City, are listed, and who are specifically complained of as being those responsible for widening the road, it would appear that the term "the aforementioned Defendants" refers to those listed defendants and not the City of Mission. The only facts stated explicitly regarding notice to the City relate to actual notice of the accident itself as part of an averment that the dictates of section 101.101 of the civil practices and remedies code have been meet. See TEX. CIV. PRAC. & REM.CODE ANN. § 101.101 (Vernon 1997).

14. See footnote 10.

15. This pleading alleges the claims of the estate and survivors of Maria G. Aguirre.

"abruptly and without warning to southbound drivers, returned from a width of sixty (60) feet to the pre-existing two lane highway having a width of forty (40) feet," and complain that "there had not been erected, nor did there exist road signs ... fog line, shoulder stripe, guard rails or other devices to warn the traveling public of the abrupt change in the width of the highway."

Likewise, in reference to their specific complaints against the City, the intervenor-appellees allege that the City was "negligent generally" as well as

a. In causing, allowing or permitting the existence of a dangerous and hazardous condition at the location of the accident in question to exist such that an artificially widened portion of the road existed for substantial distance along North Glasscock Road;

b. In failing to properly design the improved widened portion of North Glasscock Road by not placing a barrier or proper warning devices and signs, road stripes, reflectors or other means and methods of advising the public of the artificially dangerous condition and/or preventing the driver and vehicles from using the widened portion of the road;

c. In failing to properly construct the widened portion of the said highway in accordance with generally accepted Tex D.O.T. rules, regulations, standards, M.U.T.C.D. standards, warrants, protocols, and codes, including barriers, signs, reflectors and striping to warn the traveling public of the dangerous condition;

d. In violating state regulations, design manual and maintenance guidelines and warrants relative to the maintenance, sign, construction and design of road-

ways applicable to the State of Texas, and

e. In failing to provide a free recovery zone to drivers because of an insufficient, substandard and artificially widened highway including the failure to insure that the traveling public was properly warned of the abrupt change in the contour and width of the highway immediately south of the subdivision;

f. In failing to construct a shoulder or other free recovery zone south of the widened portion of the highway and otherwise failing to utilize generally accepted engineering standards, designs, and protocols so as to prevent the existence and use of an artificially dangerous, unusual and unexpected condition on said highway.

The intervenor-appellees' petition mirrored the allegations in the Fourth Amended Petition quoted above pertaining to notice, duty, "special defect," specific sections of the Texas Tort Claims Act under which plaintiff-appellees asserted sovereign immunity was waived, and violations of the MUTCD.

### Categories of Claims

In both petitions, the claims fall into two categories: [16] (1) complaints related to the design of the road, specifically the widening and narrowing of the road and the lack of a free recovery zone or shoulder south of the widened area; and (2) complaints regarding the lack of warning devices such as road signs, traffic signals, barriers, fog lines, reflectors and striping. Both categories are inclusive of the claims made as to the "construction" of the road and the failure to follow certain regulations and standards, including the

---

**16.** We do not discuss the claim that the City was "generally negligent" as such a claim is facially insufficient to raise a claim under the Texas Tort Claims Act. *Miller,* 51 S.W.3d at 587.

MUTCD,[17] since the only complaints made regarding construction, and the failure to comply with certain standards, relate to the road's initial design and the failure to include warning devices regarding the same.[18] Appellees specifically cite to sections 101.215 (and various subsections thereunder), 101.025, and 101.022(b) of the civil practices and remedies code as providing the waiver of immunity upon which they rely.

The first cited section, section 101.0215, as previously noted, does not itself provide a waiver of sovereign immunity. The second cited section, section 101.25, though indeed an express waiver of sovereign immunity, only waives immunity as to liability created under the Act. Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a) (Vernon 1997). Thus, the invocation of either of these sections by appellees does not suffice to establish a waiver of the City's sovereign immunity. Rather, facts must be pled which raise a claim falling within the scope of section 101.021. *Miller*, 51 S.W.3d at 587; *Alvarado*, 865 S.W.2d at 155.

Both petitions attempt to raise claims which would fall within the scope of section 101.021(2), namely claims as to the condition of real property. Appellees specifically allege a special defect under section 101.022(b). Appellees raise no claims under section 101.021(1) of the Act. Tex. Civ. Prac. & Rem.Code Ann. § 101.021(1) (Vernon 1997). Thus to overcome their first "statutory hurdle," appellees must show that the claims raised are within the scope of section 101.021(2). *Alvarado*, 865 S.W.2d at 155.

## APPELLEES' CLAIMS UNDER SECTION 101.021(2)

■ The Texas Tort Claims Act recognizes liability for two types of dangerous conditions of real property under section 101.021(2)—premise defects and special defects. Tex. Civ. Prac. & Rem.Code Ann. § 101.022 (Vernon 1997). Where it is asserted that the injury is caused by a premise defect, the governmental unit owes to the claimant only the same duty as a pri-

**17.** Appellees also appear to attempt to raise a negligence per se claim in regard to the failure to comply with the MUTCD. A violation of the MUTCD is not negligence per se, as compliance with MUTCD is not mandatory. *See State Dep't of Highways & Pub. Transp. v. King*, 808 S.W.2d 465, 466 (Tex.1991) (per curiam) (holding that MUTCD does not establish a mandatory duty under law). Moreover, alleging negligence per se is not itself sufficient to raise a claim under the Texas Tort Claims Act; the alleged negligence per se must fall within a waiver of immunity under section 101.021 in order for jurisdiction to be established. *Mendez v. San Benito/Cameron County Drainage Dist. No. 3*, 45 S.W.3d 746, 755 (Tex.App.-Corpus Christi 2001, pet. denied). Hence a waiver of immunity as to the claimed negligence per se would have to have been pled. *Id.* Although in the present case no independent waiver of immunity was pled as to these alleged violations, and hence they cannot stand as independent claims, we still consider them insofar as they are part of

appellees' complaints as to the design of the road and lack of warning devices, which claims allege a waiver of liability for a dangerous condition of the road under section 101.021(2). Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1997).

**18.** Despite the use of the term "construction," there is no claim that the condition of the road, i.e. the surface, materials, etc., was defective, that is, did not comport with the original design as intended by the City; rather the complaints go solely and directly to the original design of the road, including the lack of certain features. *See Ramos v. Tex. Dep't of Pub. Safety*, 35 S.W.3d 723, 733 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (contrasting construction versus design complaints) and *Siders v. State*, 970 S.W.2d 189, 193 (Tex.App.-Dallas 1998, pet. denied) (finding that plaintiffs' negligent construction and maintenance claims failed as a matter of law as they were simply design claims assigned "new labels").

vate person owes to a licensee on private property. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a) (Vernon 1997). Thus, the government's only duty is not to injure the claimant willfully, wantonly, or through gross negligence. *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992) (op. on reh'g); *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974). The exception to this rule is that where a landowner has actual knowledge of a dangerous condition, and the licensee does not, the landowner then has the duty either to warn the licensee or to make the condition reasonably safe. *Tennison,* 509 S.W.2d at 562.

■ However, the limitation of the government's duty to claimants to that duty owed by a private landowner to a licensee does not apply to the government's duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to warn of the absence, condition, or malfunction of traffic regulators. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b) (Vernon 1997). Where there exists a special defect, the government unit owes the same duty to users as a private landowner owes to an invitee. *Payne,* 838 S.W.2d at 237. That is, the governmental unit must exercise ordinary care to protect the user from a dangerous condition of which the government unit is or reasonably should be aware. *Id.* A special defect is generally limited to those conditions which occur on the surface of the road, or

pose a threat to ordinary users of the roadway. *Id.* at 238.

The question of whether an alleged defect is a special defect or premise defect, and thus what duty is owed, is a question of law and therefore considered *de novo. State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex. 1999) (per curiam).

### Special Defect Claim

■ The appellees' petitions specifically assert that the condition of the road constituted a "special defect." No claim was made in the petitions that the dangerous condition complained constituted a premise defect, and hence we need not consider whether appellees pled sufficient facts to allege a premise defect.[19] *See Tex. Dep't of Transp. v. Velasco,* 40 S.W.3d 702, 704–705 (Tex.App.-San Antonio 2001, no pet.) (where plaintiffs did not plead a particular claim in the petition, such could not be the basis for jurisdiction and so was not considered in determining jurisdiction in review of denial of plea to the jurisdiction on appeal).

■ A dangerous condition need not have been created or caused by the government unit to constitute a special defect. *County of Harris v. Eaton,* 573 S.W.2d 177, 179 (Tex.1978). However, the condition needs to be analogous to, and of the same degree as, "excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b)

---

**19.** Moreover, we note that aside from not alleging a premise defect, appellees did not meet the pleading requirements necessary to raise a premise defect claim, that is, they did not plead that the City acted willfully, wantonly, or with gross negligence, nor did they plead that the governmental unit had actual knowledge of the dangerous condition as would be required to raise a claim under the exception of *State v. Tennison. See State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992) (op. on

reh'g); *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974); *see also Chapman v. City of Houston,* 839 S.W.2d 95, 100 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (mere pleading that the State should have warned or protected plaintiff from a dangerous condition does not raise a premise defect claim; plaintiff must plead that the State engaged in willful, wanton, or grossly negligent conduct or that the State had knowledge of a dangerous condition while plaintiff did not).

(Vernon 1997); *Johnson v. Tex. Dep't of Transp.*, 905 S.W.2d 394, 399 (Tex.App.-Austin 1995, no writ). It must present "an unusual and unexpected danger to ordinary users of roadways," *Payne*, 838 S.W.2d at 238, rather than "a long-standing, routine, or permanent defect." *Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 433 (Tex.App.-Fort Worth 1989, writ denied).

 The design of a roadway is a permanent feature and thus not an unusual or unexpected danger. *See Villarreal v. State*, 810 S.W.2d 419, 422 (Tex.App.-Dallas 1991, writ denied) (median which was long-standing modification in roadway was not a special defect). Nor is it of the same nature, kind or class as an excavation or obstruction which unexpectedly and physically impairs a vehicle's ability to travel on the roadway. *Rodriguez*, 985 S.W.2d at 85–86 (complaints of defective detour design which included a sharp ninety degree right turn and failure to include signs warning of the same did not state a claim for a special defect as a matter of law). Accordingly, a claim arising from allegedly negligent road design does not state a claim for a special defect. *Id.* For the same reasons, the *absence* of road signs, safety devices, or traffic signals on or near a roadway cannot be a special defect. *Id.;* *see also Wenzel v. City of New Braunfels*, 852 S.W.2d 97, 100 (Tex.App.-Austin 1993, no writ) (inadequate lighting was not an excavation or roadway obstruction and so not a special defect); *Mogayzel v. Tex. Dep't of Transp.*, 66 S.W.3d 459, 466 (Tex. App.-Fort Worth 2001, pet. denied) (plaintiff failed to show how lack of barriers, guardrails, warning signs or barrels constituted special defect).

Accordingly, neither the expanded nor the normal width portions of the road nor the lack of warning signs, barriers, or other warning or safety devices as alleged in the petitions before us are special defects under law. Appellees' petitions therefore failed to allege facts which raise a special defect claim. No other claim of liability under section 101.021 was pled, nor was a claim included asserting the violation of any other duty under section 101.022, such as those related to a premise defect.[20] Appellees have therefore failed to state a claim within the scope of liability established by section 101.021 of the Act and thus failed to demonstrate that the trial court has any jurisdiction over this cause.[21]

## THE DISCRETIONARY FUNCTION EXCEPTION AND THE NEGLIGENT IMPLEMENTATION OF POLICY

 The City also asserts that sovereign immunity is not waived as to the claims made in the petitions because of the discretionary function exception provided

---

20. In their brief on appeal, appellees assert that "there was an eradicated lane marker in this case and the City of Mission which exercised its discretion initially to build the road has a duty to exercise reasonable care implementing its decision lest it be subject to suit. Such an action could be based on premise defect or negligent implementation of policy." Without commenting on the sufficiency of such a statement to raise a claim under either theory, we note that no such claim against the City was pled in the petitions.

21. Appellees invite us to create a theory of "hybrid special defect" to allow the present case to go forward to trial. We decline appellees' invitation. As an intermediate appellate court, we are bound to follow the expression of the law as stated by the Texas Supreme Court and leave changes in the law to that court or the legislature. *Volkswagen of Am., Inc. v. Ramirez*, 79 S.W.3d 113, 128 (Tex. App.-Corpus Christi 2002, pet. filed); *Austin v. Healthtrust, Inc.*, 951 S.W.2d 78, 80 (Tex. App.-Corpus Christi 1997), *aff'd* 967 S.W.2d 400 (Tex.1998).

in section 101.056 of the Act.[22] TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 1997). Appellees counter that the discretionary function exemption does not apply because there "is no evidence in the record" of a "conscious exercise of discretion" and, alternatively, that the failure to "properly mark and maintain" the road[23] is a negligent implementation of a policy decision[24] and so subjects the City to liability.

The waivers of immunity provided by the Texas Tort Claims Act do not apply to discretionary functions—that is, to a governmental unit's failure to act, its decision to act, or its failure to decide to act—when the law leaves such actions or decisions to the discretion of the governmental unit. TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 1997); *City of Fort Worth v. Robles*, 51 S.W.3d 436, 440 (Tex.App.-Fort Worth 2001, pet. denied).

 Appellees, while acknowledging that section 101.056 protects the City from liability for discretionary functions, argue that the City has failed to bring forth any evidence that the City "conscious[ly]" exercised its discretion. Presumably appellees are arguing that there is no evidence of a meeting or formal decision in which the City decided to design (or adopt a particular design of) the road in a particular fashion or formally decided on whether and what safety features to install. However, the very language of section 101.056 rebuffs any claim that formal action on the part of a governmental unit is necessary for the applicability of the section.[25] The salient question in determining whether a certain function is discretionary, and thus whether section 101.056 applies, is not whether the governmental unit "formally" exercised its discretionary power but rather whether the function in question was one which was within the scope of the governmental units' discretionary power, that is, not mandatory by law.[26] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056(a) (Vernon 1997) ("... an act that the unit is not required by *law* to perform"); TEX. CIV. PRAC. & REM.CODE ANN. § 101.056(b) (Vernon 1997) ("if the *law* leaves the performance or nonperformance of the act to

**22.** This section, entitled "Discretionary Powers," provides
This chapter does not apply to a claim based on:
(1) The failure of a governmental unit to perform an act that the unit is not required by law to perform; or
(2) The governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.
TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 1997).

**23.** See footnote 20.

**24.** Appellees do not cite any particular policy which they assert was negligently implemented.

**25.** Section 101.056 protects governmental units from liability for the *failure* to perform an act that the unit is not required by law to

perform as well as for the *failure to make a decision* on the performance or nonperformance of a discretionary act. TEX. CIV. PRAC. & REM.CODE ANN § 101.056(1), (2) (Vernon 1997).

**26.** Indeed both the statute and very definition of discretionary power embrace, *vel non*, not only the power to act, but the power to fail to act, the power to decide, and the power to fail to decide. As we have noted, "the rule of immunity from tort liability of a city in the exercise of governmental functions extends to discretionary powers, and generally there is no liability for damages resulting from either the failure to exercise, the manner of exercising, or errors in judgment in exercising, such discretionary powers." *Sarmiento v. City of Corpus Christi*, 465 S.W.2d 813, 816 (Tex.Civ. App.-Corpus Christi 1971, no writ) (citing *City of Waco v. Darnell*, 35 S.W.2d 134, 135 (Tex. Comm'n App.1931, holding approved)).

the discretion of the governmental unit") (emphasis added). Accordingly, the determination as to whether a certain governmental function is discretionary is a question of law, not of fact. *State v. San Miguel*, 2 S.W.3d 249, 251 (Tex.1999) (per curiam). Thus, the City had no duty to bring forth evidence that a "conscious exercise" of discretion was made in order for the discretionary function exception to be applicable.

As to the issue of whether the decisions, actions, and inactions complained of in appellees' petitions are discretionary, it is well established that both road design and the failure to equip a road with warning devices or traffic signals, either at the time of the original construction [27] or at a later time, are discretionary decisions, and governmental units are immune from liability and suit for such claims unless the unit was required by law to take or refrain from a certain action. *See id.* (holding that decisions about highway design and about what type of safety features to install are discretionary policy decisions and finding no cognizable claim under the Texas Tort Claims Act for complaint as to type of marker or safety device used); *see also Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex.2002) (stating that governmental agency may not be sued for the design of public work such as a roadway or for the failure to install safety features such as barriers and guard rails as such are discretionary duties for which immunity is retained and finding that plea of dangerous condition arising from highway design and lack of safety

features did not state a claim under the Texas Tort Claims Act); *Rodriguez*, 985 S.W.2d at 86 (rejecting complaint as to design of detour and lack of warning signs because decisions were discretionary); *Mogayzel*, 66 S.W.3d at 466 (deciding that no cause of action was stated in claim that highway design created dangerous condition); *Siders v. State*, 970 S.W.2d 189, 192–93 (Tex.App.-Dallas 1998, pet. denied) (finding that placement of stop signs and other features are discretionary and cannot give rise to liability for claims related to failure to remove old stop sign); *Maxwell v. Tex. Dep't of Transp.*, 880 S.W.2d 461, 464 (Tex.App.-Austin 1994, writ denied) (determining that sovereign immunity was not waived for claim of alleged dangerous design of culvert and lack of safety features or warning devices); *City of El Paso v. Ayoub*, 787 S.W.2d 553, 554 (Tex.App.-El Paso 1990, writ denied) (holding that design, placement, and upgrading of safety features, such as guardrails and barricades, are immune from liability as these are discretionary powers); *Palmer v. City of Benbrook*, 607 S.W.2d 295, 299 (Tex.Civ.App.-Fort Worth 1980, writ ref'd n.r.e.) (holding that decision as to width of traffic lanes is discretionary act, and thus city could not be held liable for decision on width of road).

Furthermore, section 101.060(a) of the Act specifically applies this principle to traffic control devices, preserving sovereign immunity for the decision to install or not install road signs and warning devices on roads where not mandated by law.[28]

---

27. Lights, road signs, and safety features are considered part of a roadway's design. *Siders*, 970 S.W.2d at 192.

28. Section 101.060, entitled "Traffic and Road Control Devices," reads

(a) This chapter does not apply to a claim arising from:

(1) The failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;

(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or

TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a) (Vernon 1997); *see also Rodriguez*, 985 S.W.2d at 86.

■ Thus the decisions, acts, and failures to act complained of in the petitions in the instant case are discretionary ones, and, accordingly, sovereign immunity was preserved by sections 101.056 and 101.060, in the absence of laws mandating them or mandating contrary action,[29] whether or not any "conscious exercise of discretion" on the part of the City took place. In other words, under the Tort Claims Act, the City cannot be held liable for the "failure to perform an act that it is not required by law to perform or for decisions that are purely discretionary," as these are. *Zambory v. City of Dallas*, 838 S.W.2d 580, 582 (Tex.App.-Dallas 1992, writ denied).

■ Appellees next argue that jurisdiction exists because the City can be held liable under the theory of negligent implementation of its policy decisions.

Negligent implementation of policy is a theory of liability predicated on the distinction between negligent *formulation* of discretionary policy, for which sovereign immunity is preserved, and negligent *implementation* of that same formulated discretionary policy, for which it is not. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex.1995). While discretionary policy decisions are exempt from tort claims act waivers, decisions and actions at the operational level are not. *State v. Terrell*, 588 S.W.2d 784, 787–88 (Tex.1979). This distinction prevents judicial review of policy decisions while allowing for liability for the negligent carrying out of any policy decision made. *Id.* at 788. Thus, for example, the decision by a governmental unit whether and how to detect speeding individuals is not reviewable, but once a policy is enacted that speeding individuals will be detected, and how, damages arising out of the negligent implementation of such policy can subject the governmental unit to liability. *Id.*

By invoking the applicability of such doctrine, a party necessarily concedes that the policy decision which was adopted was discretionary and thus that the discretion-

---

malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or

(3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

(b) The signs, signal, and warning devices referred to in this section are those used in connection with hazards normally connected with the use of the roadway.

(c) This section does not apply to the duty to warn of special defects such as excavations or roadway obstructions.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.060 (Vernon 1997).

The petitions in the instant case do not allege any of the exceptions of section 101.060, namely those of subsections (a)(2) or (a)(3), and indeed do not address the applicability of section 101.060 at all. TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a)(2), (a)(3) (Vernon 1997). We are aware that under subsection (c), the preservation of sovereign immunity under section 101.060 does not apply to a special defect claim. TEX. CIV PRAC. & REM. CODE ANN. § 101.060(c) (Vernon 1997). However, as previously discussed, no special defect claim was properly stated in the present case.

29. Although appellees argue that on appeal that there was "no evidence in the record" that the decisions involved were the result of a "conscious exercise of discretion," they do not argue that the City had no discretion, that is, that it was mandated by law to take certain actions. Appellees do assert violations of the MUTCD and other unspecified regulations in their petitions, but they do not assert that these imposed a mandatory duty. Of course, as previously noted, MUTCD does not impose any mandatory duty. *King*, 808 S.W.2d at 466.

ary action exception of section 101.056 applies, but asserts that there has been some negligence in the carrying out, or implementation, of such policy decision. Accordingly, to state a negligent implementation claim, a plaintiff must identify a particular policy adopted by the governmental unit and state facts which raise a claim that the policy was negligently carried out at the operational level. *See Crossland*, 781 S.W.2d at 433 (allegation of general policy to warn of danger did not make State liable for particular decision to design bridge without lights); *Waco v. Hester*, 805 S.W.2d 807, 812–13 (Tex.App.-Waco 1990, writ denied) (claim of negligent implementation of policy was asserted when plaintiff complained of specific violations of implementation of city jail's policy regarding segregation of prisoners).

Appellees made no such assertions in their petitions. Appellees did not allege any negligent implementation of any City policy, nor did they identify any policy which the City adopted or plead any facts which would demonstrate the violation of such policy. In short, appellees never raised a claim of negligent implementation of policy in their petitions. *See Mogayzel*, 66 S.W.3d at 465–66 (petition that did not allege that complained-of lack of guardrails, warning signs, or other safety devices on highway came about through negligently implemented policy or plan, but rather only raised a complaint about the original design of highway without such safety features, did not raise a claim for which immunity was waived under the negligent implementation theory of liability); *Tex. Dep't of Transp. v. Bederka*, 36 S.W.3d 266, 272 (Tex.App.-Beaumont 2001, no pet.) (petition which contained no allegation that governmental unit made policy decision to perform a discretionary act but failed to implement that decision did not state a claim under a negligent implementation theory). Having failed to plead

such a claim in their petitions, appellees cannot rely on it now to establish their claim of jurisdiction. It is axiomatic that a trial court cannot have jurisdiction over a claim that was never pled. *See Hicks v. Lamar Consol. Indep. Sch. Dist.*, 943 S.W.2d 540, 543 (Tex.App.-Eastland 1997, no writ) (where plaintiff on appeal asserted exceptions which would permit jurisdiction, but had failed to allege such exceptions in his petition before the trial court, jurisdiction did not lie).

Moreover, even if such a claim had been made, the assertion of a negligent implementation theory of liability arises only after a plaintiff has properly asserted a waiver of immunity under section 101.021. *City of Orange v. Jackson*, 927 S.W.2d 784, 786 (Tex.App.-Beaumont 1996, no writ). Since appellees failed to do so, the theory of negligent implementation liability does not arise in this case. *Id.*

Therefore, we find that even if a claim had been raised which fell within the scope of section 101.021, sovereign immunity was not waived as to the decisions, acts, and failures to act complained of in the petitions as the same were discretionary, and so sovereign immunity was preserved under the provisions of sections 101.060 and 101.056(a) of the Act.

## CONCLUSION

Having determined that appellees failed to state a claim which falls within the scope of liability for which sovereign immunity is waived under the Act, we must now decide whether such petitions are incurably defective, or whether, under the facts alleged in the petitions, the pleadings might be amended to allege a cause of action within the trial court's jurisdiction.

Appellees pled only a claim of special defect. As noted previously, the alleged dangerous condition is not a special defect

under law. Moreover, the claims alleged arise from discretionary functions that fall within the exceptions provided by sections 101.056 and 101.060 of the Act, for which sovereign immunity is preserved. Under the facts of this case, no amendment could possibly cure such a defect in the pleadings and, therefore, the claims must be dismissed. *Ramirez*, 74 S.W.3d at 867–868.

We sustain the City's issues on appeal, find that the petitions fail to state a claim against the City that falls within the waiver of sovereign immunity provided by the Texas Tort Claims Act, reverse the trial court's decision denying the plea to the jurisdiction and render judgment dismissing all claims against the City for lack of subject matter jurisdiction.