

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## NUMBER 13-11-00664-CV

## IN THE ESTATE OF BERTHA M. NEWSOM JONES A/K/A
## BERTHA MAE NEWSOM JONES, DECEASED

On appeal from the County Court
of Jefferson County, Texas.

## NUMBER 13-11-00692-CV

## IN RE LINDA D. BURKE

On Petition for Writ of Prohibition.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Garza**

This appeal and parallel petition for writ of prohibition arise from a probate

proceeding. In the appeal,[1] appellant/relator Linda D. Burke contends that the probate court (1) lacked subject matter jurisdiction, and (2) erred by denying her motion for directed verdict on an application to remove Burke as independent administrator of the estate. In the original proceeding,[2] Burke seeks an order prohibiting the probate court from appointing a successor administrator in the case. We will affirm the probate court's judgment and deny the petition for writ of prohibition.

## I. BACKGROUND

In 2006, Burke filed an application to probate the will of her deceased mother, Bertha M. Newsom Jones a/k/a Bertha Mae Newsom Jones ("Bertha"). Bertha's will named Burke and her other children, appellees/real parties in interest Michael Van Cleve Jones ("Michael") and William F. Jones ("Billy"), as executors of her estate,[3] and it left all of her property to the three children. The will was probated and, with Michael's and Billy's consent, letters testamentary were granted to Burke as independent executor of the estate. *See* TEX. PROB. CODE ANN. § 145(a) (West Supp. 2011). An inventory, appraisal, and list of claims were submitted and approved by the probate court.

Subsequently, believing that Burke was guilty of gross misconduct or gross mismanagement of the estate, Michael and Billy filed an application to remove Burke as independent administrator. *See id.* § 149C (West Supp. 2011). The application

---

[1] Appellate cause number 13-11-00664-CV.

[2] Appellate cause number 13-11-00692-CV.

[3] In particular, Bertha's will stated in relevant part as follows:

I am asking that Linda D. Burke named here with [sic] shall act as Executrix of this Will and of my estate, and be assisted by Billy F. Jones II, Michael V.C. Jones. The three to work together all the way. If for any reason at all one of the above named persons is unable to fulfill his or her obligations pretaining [sic] to the estate of their mother Bertha Newson-Jones [sic], Full power is granted to the remaining named persons, and that [sic] this document will still be legal and binding in every respect.

2

specifically contended that Burke withdrew $111,376 from a Wells Fargo bank account that had been funded with proceeds obtained from payable-on-death ("P.O.D.") accounts established by Bertha for her children's benefit. The application also contended that Burke: (1) "misapplied funds" belonging to the estate; (2) "spent unnecessary funds" on maintaining certain real property belonging to the estate; (3) "is[ ]making no productive effort" to sell that real property; and (4) advised Michael and Billy through her attorney that "she was no longer going to pay current debts of the Estate and the debts could be paid by [Michael and Billy]." Burke filed an answer denying the allegations, and she then filed a plea to the jurisdiction, which the probate court denied.

A hearing was held on Michael and Billy's application on August 31, 2011. Burke was the only witness to testify. At the close of the hearing, Burke's counsel orally moved for a directed verdict; the probate court denied the motion. On September 6, 2011, the probate court rendered an order granting Michael and Billy's application and removing Burke as independent administrator. This appeal followed.[4]

After the notice of appeal was filed, the probate court filed findings of fact and conclusions of law. The findings of fact were as follows:

1. That [Burke] failed to segregate estate and non-estate assets in her administrations of the estate;

2. That Burke has made gross errors in accounting for estate assets and disbursements;

3. That Burke has anticipatorily repudiated her fiduciary responsibilities as Independent Administrator by refusing to pay ad valorem taxes due on estate property;

4. That Burke expended significant estate funds without doing a cost/benefit analysis of the financial effects such expenditures would

[4] This appeal was transferred from the Ninth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

have on the estate;

5. That Burke expended estate funds on personal expenses which included meals;

6. That Burke engaged in self-dealing by claiming payments from estate funds for work allegedly done by her husband;

7. That Burke displayed a gross lack of attention to accounting for and documenting expenses and disbursements of estate funds;

8. That Burke expended estate funds for non-perishable items such as tools without accounting for such purchases as estate assets after the date of purchase;

9. That Burke admitted to no understanding of her fiduciary responsibilities to the estate[;]

10. That Burke's actions showed an intent to manage the interests of the estate for her own benefit rather than all beneficiaries;

11. That Burke grossly mismanaged the estate in her attempted handling of the sale of the decedent's homestead[.]

The conclusions of law included the following: "Sufficient grounds appear to support the belief that Burke has misapplied and/or is about to misapply property committed to her care" and "Burke is guilty of gross mismanagement of the estate in the performance of her duties."

## II. DISCUSSION

### A. Subject Matter Jurisdiction

By her first issue on appeal, Burke argues that the probate court lacked subject matter jurisdiction to render the challenged order because there were "no justiciable issues" properly before the court. Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133

4

S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Burke's argument is based on the fact—undisputed by Michael and Billy—that the Wells Fargo bank account was originally funded by proceeds from P.O.D. accounts, and she notes that P.O.D. accounts do not become part of a decedent's estate but rather pass outside of probate. *See* TEX. PROB. CODE ANN. § 439A(b)(2) (West Supp. 2011) (promulgating a form to be used by financial institutions in establishing P.O.D. accounts which states: "The party to the account owns the account. On the death of the party, ownership of the account passes to the P.O.D. beneficiaries of the account. The account is not a part of the party's estate"); *see also Punts v. Wilson*, 137 S.W.3d 889, 892 (Tex. App.—Texarkana 2004, no pet.). Burke argues that, because the funds in the Wells Fargo account were derived solely from Bertha's P.O.D. accounts, "the trial court did not have any subject-matter jurisdiction over said proceeds and could not adjudicate any controversy concerning them."

In support of her argument, Burke points to probate code section 145(h), which states:

> When an independent administration has been created, and the order appointing an independent executor has been entered by the county court, and the inventory, appraisement, and list aforesaid has been filed by the executor and approved by the county court or an affidavit in lieu of the inventory, appraisement, and list of claims has been filed by the executor, as long as the estate is represented by an independent executor, further action of any nature shall not be had in the county court except where this Code specifically and explicitly provides for some action in the county court.

*Id.* § 145(h). However, this statute does not categorically forbid the probate court from conducting further proceedings after an inventory, appraisal, and list of claims has been

5

filed; instead, it permits such further proceedings when "specifically and explicitly" called for elsewhere in the probate code. And, section 149C of the probate code specifically and explicitly provides as follows:

> The county court, as that term is defined by Section 3 of this code,[5] on its own motion or on motion of any interested person, after the independent executor has been cited by personal service to answer at a time and place fixed in the notice, may remove an independent executor when:
>
> . . .
>
> (2)    sufficient grounds appear to support belief that the independent executor has misapplied or embezzled, or that the independent executor is about to misapply or embezzle, all or any part of the property committed to the independent executor's care;
>
> . . . [or]
>
> (5)    the independent executor is proved to have been guilty of gross misconduct or gross mismanagement in the performance of the independent executor's duties . . . .

*Id.* § 149C(a), (a)(2), (a)(5). Burke does not dispute that Michael and Billy are "interested person[s]" or that she was properly served with citation. The statute therefore clearly authorizes the probate court to exercise jurisdiction over an application, such as that filed by Michael and Billy, alleging that an independent administrator of an estate misapplied estate funds or exhibited gross misconduct or gross mismanagement in her duties.[6]

---

[5] "'County Court' and 'Probate Court' are synonymous terms and denote county courts in the exercise of their probate jurisdiction, courts created by statute and authorized to exercise original probate jurisdiction, and district courts exercising probate jurisdiction in contested matters." TEX. PROB. CODE ANN. § 3(e) (West Supp. 2011).

[6] Burke also contends that subject matter jurisdiction did not lie because Michael and Billy's application failed to "specifically allege facts as to how [Burke] has been guilty of gross misconduct and/or gross mismanagement and must specifically allege facts as to how [Burke] misapplied or embezzled estate funds." This is a misstatement of the law. A plaintiff should plead facts supporting jurisdiction but specific allegations about subject matter jurisdiction are not required. *Tex. Dep't of Transp. v. Beckner*, 74 S.W.3d 98, 103–04, 104 n.10 (Tex. App.—Waco 2002, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air*

We overrule Burke's first issue.

## B. Motion for Directed Verdict

By her second issue, Burke contends that the probate court erred by denying her oral motion for directed verdict. A directed verdict is proper when a defect in the opponent's pleadings makes them insufficient to support a judgment, the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or the evidence offered on a cause of action is insufficient to raise an issue of fact. *Koepke v. Martinez*, 84 S.W.3d 393, 395 (Tex. App.—Corpus Christi 2002, pet. denied). Evidence is legally insufficient to raise an issue of fact when: (1) there is a complete absence of evidence of the fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove the fact; (3) the evidence offered to prove the fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 822–23 (Tex. 2005). We review all of the evidence in the light most favorable to the non-movant, credit favorable evidence if reasonable jurors could, and disregard contrary evidence if reasonable jurors could. *Id.* at 827.

Burke's motion contended that Michael and Billy failed to establish any of the elements listed in Texas Probate Code section 149C, subsections (a)(2) or (a)(5). *See* TEX. PROB. CODE ANN. § 149C(a)(2), (a)(5). As noted, those subsections permit a probate court to remove an independent administrator of an estate when "sufficient

---

*Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); TEX. R. CIV. P. 47, 78–82). In any event, if Burke believed the allegations contained in the application to remove her as executor were insufficiently specific to establish subject matter jurisdiction, it was incumbent upon her to file a special exception to that pleading. *See id.* at 104 ("If the pleadings do not affirmatively establish subject matter jurisdiction, the proper procedure for objecting is to file a special exception to require an amended pleading.") (citing *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 805 (Tex. 1989); *Godley Indep. Sch. Dist. v. Woods*, 21 S.W.3d 656, 661 (Tex. App.—Waco 2000, pet denied); TEX. R. CIV. P. 63, 90, 91). She did not do so.

7

grounds appear to support belief that the independent executor has misapplied or embezzled, or that the independent executor is about to misapply or embezzle, all or any part of the property committed to the independent executor's care" or when "the independent executor is proved to have been guilty of gross misconduct or gross mismanagement in the performance of the independent executor's duties . . . ." *Id.* § 149C(a)(2), (a)(5). In *Kappus v. Kappus*, the Texas Supreme Court noted that subsection 149C(a)(2) "associates misapplication with embezzlement," and therefore, "we give these terms a related meaning and interpret them to authorize removal if the trial court believes the executor was engaged in subterfuge or wrongful misuse." 284 S.W.3d 831, 835–36 (Tex. 2009). The *Kappus* Court also noted that, in drafting subsection 149C(a)(5), the Legislature did not use "misconduct or mismanagement" but rather "gross misconduct or gross mismanagement." *Id.* at 836. The use of the adjective "gross," which means "glaringly obvious" or "flagrant," indicates that "something beyond ordinary misconduct and ordinary mismanagement is required to remove an independent executor." *Id.*[7]

Burke testified that she, Michael and Billy each obtained approximately $34,000 from the P.O.D. accounts upon Bertha's death. The three then voluntarily contributed

---

[7] Prior to *Kappus*, courts generally held that "gross misconduct" and "gross mismanagement" included (1) any willful omission to perform a legal duty, (2) any intentional commission of a wrongful act, or (3) any breach of a fiduciary duty that resulted in actual harm to a beneficiary's interests. *See, e.g., Estate of Casida*, 13 S.W.3d 519, 524 (Tex. App.—Beaumont 2000, no pet.). This standard is more strict than the one stated in *Kappus* in that it allows removal of an executor upon a finding of "any" willful or intentional malfeasance; *Kappus*, on the other hand, appears to require that such malfeasance also be "glaringly obvious" or "flagrant." *See Kappus v. Kappus*, 284 S.W.3d 831, 836 (Tex. 2009). The *Kappus* decision controls. *See City of Mission v. Cantu*, 89 S.W.3d 795, 809 n.21 (Tex. App.—Corpus Christi 2002, no pet.) ("As an intermediate appellate court, we are bound to follow the expression of the law as stated by the Texas Supreme Court . . . .").

We note that neither party, in their appellate briefs, saw fit to cite *Kappus*, the pre-*Kappus* case law, or any other law construing the applicable statute.

those funds—totaling $102,000—for estate expenses because the estate did not originally have enough cash on hand. Burke testified that she also received $31,000 from a separate P.O.D. account. Burke testified that she opened a new bank account in the name of the estate with all of these funds. At some point, Burke withdrew the remaining balance in the estate expense account, totaling about $75,000, and she opened a new account with those funds at Wells Fargo. With respect to the Wells Fargo account, Burke was the owner and Michael, Billy, and Burke's husband were named as beneficiaries.

Burke further testified that, with the assistance of an attorney, she compiled a report of estate income and expenses covering the period from March 23, 2006 to December 31, 2007.[8] The report, the accuracy of which was sworn to by Burke, was filed with the probate court on March 27, 2008 and was admitted as evidence at the August 31, 2011 hearing. The document reflected that, during the accounting period, the estate paid out claims in the total amount of $68,147.08 and received income in the total amount of $55,411.71. The estate expenses included, among other things, a $1,134.14 payment to Burke for travel expenses, and a $4,443.43 payment to Burke for "[l]odging & [f]ood expenses."[9] The estate receipts included, among other things, $10,000 from a retirement fund of which all three parties were beneficiaries.[10] The annual account did not reflect the $133,000 that Burke testified was voluntarily contributed by herself and her brothers for estate expenses. The document

---

[8] Burke acknowledged that, as an independent administrator, she was not actually required to file an annual accounting report with the court. *See* TEX. PROB. CODE ANN. § 399 (West Supp. 2011) (requiring dependent administrators to file annual accounting reports).

[9] The estate also made cash disbursements of $35,043.27, all of which was attributable to the upkeep and improvement of the estate's real property.

[10] Burke conceded that the proceeds from the retirement fund were not estate assets.

affirmatively stated that "[n]o property has come into the possession of the Independent Executrix during this accounting period that has not been previously listed or inventoried as property of the estate." Burke agreed with Michael and Billy's counsel's statement that "even though this annual account says there was $55,000 that came into [t]he Estate, really there was $155,000 [sic] because of the $100,000 [sic] that the three of you contributed[.]" The annual account stated that the estate had only $368.06 on hand at the end of the accounting period.

Also introduced into evidence was a document listing all of the administration expenses made out-of-pocket by Burke which were not included on the annual account. These expenses, incurred from January 21, 2006 to September 29, 2010, total $97,311.19. Burke testified that she is asking to be reimbursed for all of these expenses, "over and above what was already paid out of [t]he Estate." Counsel pointed out that all but $12,578.47 of those expenses were incurred in 2006 and 2007 and that the annual account submitted by Burke appears to state that she had already been reimbursed for those amounts.

With respect to the sale of the estate's real property, Burke testified that she had entered into a contract with a buyer to sell the property, but the buyer reneged on the initial agreement and instead demanded that Burke install new central air conditioning in the house. Burke testified that she refused to do so because the existing air conditioning unit had passed inspection. With respect to property taxes, the following exchange occurred:

> Q. [Michael and Billy's counsel]  Have the taxes been paid or is there a plan to pay the taxes on the property for 2010?

A. [Burke]             No. Taxes have not been paid.

Q.             Did you instruct your lawyer to instruct us that you weren't going to be responsible for paying the taxes and that we should be responsible for it or my clients?

A.             I asked my attorney to write a letter and ask my brother, Michael, since he was working if he could pay the taxes since I had paid the taxes for the last several years. I had taken responsibility for paying taxes on the house. I have taken responsibility to pay the lawn care. I paid the house insurance, all that has come out of my pocket and I asked if he could do it since the house is partially his as well.

Q.             All right.

A.             I knew my brother, Billy, couldn't do it, but I figured Michael could do it. I have been doing it the last four years.

Q.             But you understand as the executor it is your job to take those certain actions and do those things, correct?

A.             I just asked if he could do it.

Q.             Okay.

A.             I did not understand it was my responsibility as executor to pay taxes on a house that belonged to the three of us. No, I didn't understand that.

After both parties rested, the probate court asked Burke about several items on the list of administration expenses that she asked to be reimbursed for. The court noted that "[t]here were numerous charges in 2006 and 2007 to M & D Supply and Harbor Freight, charges were for purchases of tools." Burke explained that these purchases

11

were for "painting, it could have been hammers, wrenches, plumbing tools, whatever we needed to make repairs in the house."

Based upon the foregoing evidence, the probate court could have reasonably determined that Burke committed gross misconduct or gross mismanagement of the estate in her role as independent administrator, *see* TEX. PROB. CODE ANN. § 149C(a)(5), and that such misconduct or mismanagement was "glaringly obvious" or "flagrant." *See Kappus*, 284 S.W.3d at 836. In particular, the evidence supports the probate court's findings of fact that Burke: (1) "failed to segregate estate and non-estate assets" in her administration of the estate; (2) "anticipatorily repudiated her fiduciary responsibilities as Independent Administrator by refusing to pay ad valorem taxes due on estate property"; (3) "expended estate funds on personal expenses" including meals; (4) "displayed a gross lack of attention to accounting for and documenting expenses and disbursements of estate funds"; and (5) "expended estate funds for non-perishable items such as tools without accounting for such purchases as estate assets after the date of purchase."[11]

The probate court did not err in denying Burke's motion for directed verdict. Her second issue is overruled.

## C.     Petition for Writ of Prohibition

In her petition for writ of prohibition, Burke requests that we command the presiding judge of the probate court "not to hear [Michael and Billy's application to appoint a dependent administrator], which is scheduled for hearing on November 2,

---

[11] In light of our conclusion that the evidence was sufficient to support the probate court's judgment under probate code section 149C(a)(5), regarding gross misconduct or gross mismanagement, we need not address whether the court's judgment was also proper under section 149C(a)(2), regarding misapplication or embezzlement of estate assets. *See* TEX. R. APP. P. 47.1.

12

2011, until [Burke] has exhausted all of her appellate remedies allowed by law." She argues that the probate court lost its plenary power to appoint a successor administrator at the time she filed her appeal. Burke also filed a motion for emergency stay of all probate court proceedings, which we granted on November 1, 2011. Michael and Billy filed a motion to reconsider the stay, noting that Burke "has entered into a contract to sell the [estate's] real property and is representing that she is still the Independent Executor of the Estate." We granted the motion to reconsider in part and rendered an order on December 13, 2011 staying "all underlying proceedings, including any and all actions purportedly taken on behalf of the estate or by a personal representative of the estate" until further order of this Court.

Given our ruling on Burke's two appellate issues, the issues raised in the petition for writ of prohibition are now moot. We therefore deny the petition and lift the stay.

## III. CONCLUSION

We affirm the judgment of the probate court. Further, Burke's petition for writ of prohibition is denied, and any and all stays previously imposed by this Court on probate court proceedings or actions by purported administrators of the estate are hereby lifted in their entirety.

_____
DORI CONTRERAS GARZA
Justice

Delivered and filed the
27th day of August, 2012.

13