

# NUMBER 13-24-00122-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS DEPARTMENT OF
TRANSPORTATION,                                                    Appellant,

v.

TANYA SIMPSON INDIVIDUALLY,
AND AS A REPRESENTATIVE OF
THE ESTATE OF FLOYD SIMPSON
DECEASED AND AS NEXT FRIEND
OF JURNEE ALEXIS SIMPSON,
AMBER MICHELE SIMPSON
AND LAUREN DIOR SIMPSON,                                           Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 4
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West
Memorandum Opinion by Justice Peña**

Texas Department of Transportation (TxDOT), appellant in this interlocutory appeal, asserts governmental immunity against a wrongful death lawsuit filed by the appellee, Tanya Simpson individually and as a representative of the estate of Floyd Simpson and as next friend of Jurnee Alexis Simpson, Amber Michele Simpson, and Lauren Dior Simpson. Appellee alleges that road "polishing," or flushing,[1] constitutes a special defect for which the Texas Tort Claims Act (TTCA) waives immunity and that TxDOT should be held responsible for not placing proper and accurate warning devices. We hold that appellee has failed to invoke the trial court's subject-matter jurisdiction. Accordingly, we reverse the trial court's order denying TxDOT's plea to the jurisdiction, render judgment granting TxDOT's plea to the jurisdiction, and dismiss appellee's claims for lack of subject matter jurisdiction.

## I.    BACKGROUND

This suit involves a tragic accident that occurred on State Highway 361 (SH 361) in Nueces County, Texas. SH 361 is a two-lane, flat road of approximately thirty miles near Port Aransas, Texas. At approximately 5:11 p.m. on May 3, 2015, Kyle Matthew Jones fell asleep while driving northbound on SH 361. Jones crossed SH 361's centerline, went beyond the opposite traffic lane, and went into the opposing shoulder. Laura Ochoa was driving southbound on SH 361 when Jones came into her lane. Ochoa testified that in response, she was forced to "literally drive [her] car into the ditch on the side of the road and [Jones's] truck missed [her] by inches." Traveling behind Ochoa on a motorcycle

---

[1] We note that while appellee's petition referred to the road condition as "polishing," both parties' briefing and evidence primarily use the term "flushing." While there is evidence indicating there are technical differences between the two, for purposes of this opinion we refer to the condition as "flushing" with the understanding that appellee complains that the road lacked a sufficient level of traction.

2

was the decedent, Floyd Simpson. The decedent laid his motorcycle down to avoid a head-on collision with Jones and became separated from the motorcycle, suffering fatal injuries. In the certified crash report, the investigating officer Brett Charles Boyer offered his opinion that the contributing factors to the crash were Jones's failure to drive in a single lane and fatigue or sleep. The report further detailed that the weather condition was clear when the accident occurred and the surface condition was dry. In Jones's deposition, he agreed that being fatigued or asleep as well as failing to drive in a single lane contributed to the crash. Jones also confirmed that the day was sunny and the road was dry. Further, Jones testified that as a resident of Port Aransas who frequently drove on that stretch of SH 361, he never had any trouble with the road.

On March 4, 2016, appellee filed suit against TxDOT individually, on behalf of the decedent's estate, and as next friend of their three children.[2] In her fourth amended petition filed March 17, 2021, appellee alleged several alternative theories of liability: that TxDOT created, knew about, and failed to warn the decedent of a defective condition of real property; that TxDOT was negligent in maintaining SH 361; and that flushing of SH 361 was a special defect of which TxDOT was aware. Appellee contended that "[d]ue to years of travel and the increased motorist traveling in the area where the accident took place, the roadway itself was polished to the extent it decreased the coefficient of friction." Appellee also alleged that TxDOT knew of the allegedly defective condition and failed to place proper and accurate warning devices on SH 361. TxDOT filed an answer which generally denied all allegations and asserted sovereign immunity.

---

[2] Appellee's original petition also named Harley-Davidson Motor Company Group, LLC and DQ Partners of Dallas, LLC d/b/a Dreams Machines of Texas as defendants. Those claims have since been settled, and neither defendant is a party to this appeal.

On December 7, 2023, TxDOT timely filed a plea to the jurisdiction and a no-evidence motion for summary judgment. TxDOT argued that it enjoyed immunity from appellee's claims which was not waived. TxDOT contended that appellee has "no evidence or legally insufficient evidence to support an underlying licensee premises defect claim." Pertinent to our analysis, TxDOT argued that: (1) even if the road condition posed an unreasonable risk of harm, it was not a special defect and thus appellee could not show that TxDOT had actual knowledge of the alleged danger at the time of the crash; and (2) the trial court had no jurisdiction to hear appellee's claim regarding TxDOT's alleged failure to place proper and accurate warning devices because such claims are barred by the discretionary function exception of the TTCA.

In support of its motion, TxDOT attached, among other things, the following: a certified crash report for the subject crash; the deposition transcript of Jones; the deposition transcript of Ochoa; selected photographs taken by the Port Aransas Police Department (PAPD); redacted crash records of all crashes on SH 361 from January 1, 2013 through May 31, 2025; the expert report and deposition transcript of Jeff Milburn; the expert report and deposition transcript of David Hall; an excerpt of Northwestern University *Traffic Accident Reconstruction* manual; and deposition transcripts of four TxDOT employees: Charles Benavides, Danny Cox, Rickey Dailey; and Martin C. Horst.

Appellee responded that: (1) the condition of SH 361 was a premises defect of which TxDOT had actual knowledge and (2) the discretionary function of the TTCA is inapplicable because TxDOT failed to maintain a safe roadway by not implementing certain safety devices. Attached in support of appellee's response, among other things, were photographs taken by the PAPD; a local news article; TxDOT's *Seal Coat and*

*Surface Treatment Manual*; and a municipal maintenance agreement between the City of Port Aransas and the State of Texas. A subsequent reply and sur-reply were filed by the respective parties.

The trial court denied TxDOT's plea, and this appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

## II. STANDARD OF REVIEW

Whether a court has subject matter jurisdiction is a question of law, which we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In de novo review, we exercise our own discretion and accord no deference to the trial court's decision. *Vaughn v. Vaughn*, 710 S.W.3d 412, 418 (Tex. App.—Eastland 2025, pet. denied) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)).

A plaintiff must allege facts that affirmatively establish the trial court's subject-matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). In determining whether the plaintiff has satisfied this burden, we construe the pleadings liberally in the plaintiff's favor and deny the plea to the jurisdiction if facts affirmatively demonstrating jurisdiction have been alleged. *Id.* at 643; *Miranda*, 133 S.W.3d at 227. "If the pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and plaintiffs should be afforded an opportunity to amend." *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 95 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Miranda*, 133 S.W.3d at 226–27). "If the pleadings affirmatively negate jurisdiction, a plea may be granted without allowing plaintiffs an opportunity to amend." *Id.* (citing *Miranda*, 133 S.W.3d at 227).

When a defendant challenges the sufficiency of jurisdictional facts, as TxDOT did here, the trial court must consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *Miranda*, 133 S.W.3d at 227. In doing so, the court will "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Miranda*, 133 S.W.3d at 228. Like a no-evidence motion for summary judgment, a jurisdictional challenge that properly implicates the merits will require the plaintiff "to present sufficient evidence on the merits of her claims to create a genuine issue of material fact." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). When the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. If, however, the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea, and the fact issue will be resolved by the factfinder. *Id.* at 227–28.

### III. PLEA TO THE JURISDICTION

TxDOT argues that the trial court lacks jurisdiction over appellee's premises defect claim because, among other things, flushing of a road is not a special defect and because there is no evidence that TxDOT had actual knowledge of an unreasonably dangerous condition. TxDOT further argues that government units retain immunity under the TTCA for discretionary acts such as the placement of safety features on roadways.

### A. Premises Defect

We first address the premises defect claim.[3] TxDOT argues, among other things,

---

[3] Appellee's petition alleged several theories of liability: that TxDOT created, knew about, and failed to warn the decedent of a defective condition of real property; that TxDOT was negligent in maintaining SH 361; and that flushing was a special defect of which TxDOT was aware yet failed to warn. In appellee's

6

that the trial court lacks jurisdiction over appellee's premises defect claim because the road condition was not a special defect and consequently there is no evidence that it had actual knowledge of such condition.

### 1. Applicable Law

Sovereign immunity protects the State and its political subdivisions from liability for negligence. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). However, immunity may be waived by constitutional or statutory provisions. *Id.* The TTCA creates limited waivers of sovereign immunity. TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109; *Miranda*, 133 S.W.3d at 224. The TTCA "expressly waives immunity" in "three areas when the statutory requirements are met: (1) use of publicly owned automobiles; (2) injuries arising out of a condition or use of tangible personal property; and (3) premises defects." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) (citations omitted).

"If a plaintiff's claim arises from a premises defect, then the government's duty is generally limited to 'the duty that a private person owes to a licensee on private property.'" *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 86 (Tex. 2023) (quoting TEX. CIV. PRAC.

---

response, she reiterated that her claims cannot be dismissed because "they arise out of conditions and use of the roadway as well as premises defects." However, it is well established that "a claim for a condition or use of real property is a premises defect claim under the [TTCA]." *Sampson*, 500 S.W.3d at 385 (citing *Miranda*, 133 S.W.3d at 230). "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (citation modified). Appellee's various theories of liability all relate to the "condition or use of real property"—flushing on SH 361. *See Sampson*, 500 S.W.3d at 385. As alleged here, liability is predicated on TxDOT's "failure to take measures to a make the property safe" rather than "contemporaneous conduct by the owner that caused the injury." *Del Lago Partners*, 307 S.W.3d at 776. The parties' briefing on the condition of SH 361 primarily analyze it through a premises defect framework. We likewise conclude that appellee's cause of action is properly classified as a premises defect claim and only address it as such. *See Sampson*, 500 S.W.3d at 385–86; *see generally Miranda*, 133 S.W.3d at 233 ("The [TTCA's] scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in [§] 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property.").

& REM. CODE § 101.022(a), (c)). "Under a licensee standard, a plaintiff must prove that the governmental unit had actual knowledge of a condition that created an unreasonable risk of harm, and also that the licensee did not have actual knowledge of that same condition." *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam) (citation omitted). "But this limitation on the government's duty does not apply to the duty to warn of special defects, a subset of premises defects likened to excavations or obstructions on roadways." *Id.* (first citing TEX. CIV. PRAC. & REM. CODE § 101.022(b); then citing TEX. CIV. PRAC. & REM. CODE § 101.060(c)). For special defects, the government owes a duty to warn that is the same as a private landowner owes an invitee. *Id.* at 86–87. "Under an invitee standard, a plaintiff need only prove that the governmental unit should have known of a condition that created an unreasonable risk of harm." *York*, 284 S.W.3d at 847 (citation omitted). "Whether a condition is a premise defect or special defect is a question of law, which we review de novo." *Id.* (citation omitted).

### 2.    Analysis

We begin by determining whether SH 361's road flushing is a special defect as alleged in appellee's petition. TxDOT argues that a "slick road" is not a special defect.[4] We agree.

The TTCA does not define "special defect" but gives guidance by likening special defects to "excavations or obstructions." *See* TEX. CIV. PRAC. & REM. CODE § 101.022(b). Thus, "[u]nder the ejusdem generis rule, we are to construe 'special defect' to include those defects of the same kind or class as [excavations or obstructions]." *York*, 284

---

[4] We assume without deciding that there is sufficient evidence to raise a fact question on whether the flushing on SH 361 posed an "unreasonable risk of harm." *See Christ*, 664 S.W.3d at 87 ("[A] plaintiff asserting a premises defect under the [TTCA], whether treated as a licensee or invitee, must prove that 'a condition of the premises created an unreasonable risk of harm' to the claimant." (citation omitted)).

S.W.3d at 847 (alteration in original) (quoting *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978)). In determining whether a road condition is a special defect, "the central inquiry is whether the condition is of the same kind or falls within the same class as an excavation or obstruction." *Id.* (citations omitted). Factors courts consider in making this determination include "(1) the size of the condition, (2) whether the condition unexpectedly and physically impairs a car's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger to the ordinary users of the roadway." *Brazoria County v. Van Gelder*, 304 S.W.3d 447, 452 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *York*, 284 S.W.3d at 847).

TxDOT points to Ochoa's testimony as evidence that the road condition did not physically impair a vehicle's ability to travel nor presented an unusual danger to users of the roadway. During Ochoa's deposition, the following exchange occurred regarding the condition of SH 361:

| [TxDOT's counsel]: | And when you slammed on the brakes, you didn't lose control, correct? |
|---|---|
| [Ochoa]: | No. |
| [TxDOT's counsel]: | And when you turned your wheel at 2 o'clock to get off the road, you also didn't lose control, correct? |
| . . . . | |
| [Ochoa]: | No, I did not. |
| [TxDOT's counsel]: | And you didn't spin out at all, did you? |
| [Ochoa]: | No. Huh-uh. |
| [TxDOT's counsel]: | Did the road prevent you from having traction to avoid the crash when the truck came into your |

9

|                     | lane of travel?                                                            |
| ------------------- | -------------------------------------------------------------------------- |
| . . . .             |                                                                            |
| [Ochoa]:            | No, not at all.                                                            |
| [TxDOT's counsel]:  | Did the road affect your ability to maneuver your car in any way?          |
| [Ochoa]:            | Huh-uh. No, sir, it did not.                                              |
| [TxDOT's counsel]:  | And did the road cause any loss of control on your part at all?           |
| [Ochoa]:            | No.                                                                       |
| [TxDOT's counsel]:  | Do you blame the road in any way for the cause of this crash?            |
| . . . .             |                                                                            |
| [Ochoa]:            | No.                                                                       |

Attached to TxDOT's plea to the jurisdiction were photographs taken by the PAPD following the accident, including the following two which display the road flushing:



Appellee attached TxDOT's *Seal Coat and Surface Treatment Manual* in its response to TxDOT's plea, which defined flushing as "[t]oo much binder used during the construction of seal and surface treatments . . . . Excess binder exudes upward onto the pavement surface and is the origin of the black and frequently sticky surface condition referred to as flushing . . . which can lead to a loss of skid resistance." The manual also states that flushing is among some of the "most serious defects in seal coats and surface treatments." The manual also contained a photo example of a flushed seal coat surface:



Appellee argues that a comparison of the manual example photograph with the photographs of SH 361's condition at the time of the accident clearly indicates flushing, "one of the most serious defects." Appellee further points to testimony from TxDOT employee's Charles Benevides and Danny Cox, who agreed the photos of SH 361 exhibited signs of flushing. Appellee contends that this, along with the manual, is a "clear admission by TxDOT" that the flushing is "a serious and obviously special defect." Appellee's engineering expert David Hall stated in his report that a review of photographs from the accident "clearly show rutting, asphalt bleeding, and aggregate polishing." Hall further stated that "the decreased friction surface in [SH 361] resulted in a longer stopping distance for the motorcycle." Hall later testified that the coefficient of friction—the amount

of force required to drag an object over a given surface—should be between 0.7 to 0.8, and that SH 361's coefficient of friction "was less than what it should have been." TxDOT responds that Hall's opinions were conclusory and speculative as they were made without measuring the friction of the road. TxDOT further argues that ignoring other publications to the contrary,[5] flushing is not a condition which fits into the strict class of special defects recognized by case law.

We agree with TxDOT. The alleged lack of traction on SH 361 did not form a hole in the road like an excavation or physically block the road like an obstruction. *See York*, 284 S.W.3d at 847 (holding a layer of loose gravel was not a special defect); *Eaton*, 573 S.W.2d at 178–180 (holding that a large hole six to ten inches deep and four to nine feet wide covering ninety percent of the road's width was a special defect, and suggesting an avalanche clogging a road would likewise be a special defect); *City of El Paso v.* Chacon, 148 S.W.3d 417, 425 (holding a hole formed by the removal of a pole was a special defect). Nor did it "physically impair a car's ability to travel on the road in the manner that an excavated road or obstruction blocking the road does." *York*, 284 S.W.3d at 848 (citing *State v. Rodriguez*, 985 S.W.3d 83, 85 (Tex. 1999) (per curiam), *abrogated on other grounds by Denton County v. Beynon*, 283 S.W.3d 329 (Tex. 2009)). As Ochoa and Jones testified, the condition of the road did not present an unexpected and unusual danger to them as ordinary drivers of the roadway. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237–38 (Tex. 1992).

---

[5] TxDOT points out that appellee attached TxDOT research entitled "Maintenance Solutions for Bleeding and Flushes Pavements," which stated: "First and foremost, flushing is not an immediate maintenance problem and may not be a maintenance problem at all." This excerpt was located under section entitled, "Flushed Pavement: Not Necessarily a Bad Thing." TxDOT also points to the Northwestern University *Traffic Accident Reconstruction* manual, which states that dry, traveled asphalt surfaces should have a coefficient of friction between .55 and .70 at over thirty miles per hour.

Appellee asserts that the Texas Supreme Court has stated that "a special defect can be any condition that poses an unexpected and unusual danger, even if it is not an excavation or obstruction." *Beynon*, 283 S.W.3d at 332 n.14. When read in its full context, that footnote disavows the proposition that a special defect can be *any* condition that poses an unexpected and unusual danger. Later in the same footnote, the court cautioned that waiving immunity for other conditions "departs from the [TTCA's] explicit focus on 'excavations or obstructions.'" *Id.* The Texas Supreme Court made clear that "the statutory test is simply whether the condition is of the same class as an excavation or obstruction." *Id.* at 332 n.11. A road without sufficient traction does not fall into the same class as an excavation or obstruction.

We hold the alleged road condition here falls outside the special defect class as a matter of law. Instead, it "falls in the same class as ordinary premises defects—those condition that do not reach the level of an obstruction or excavation." *See York*, 284 S.W.3d at 847. Thus, a licensee standard of care is appropriate in this case, and there must be evidence in the record that TxDOT had actual knowledge of the dangerous condition. *See Tex. Dep't of Transp. v. Gutierrez*, 284 S.W.3d 848, 850 (Tex. 2009) (per curiam).

### 3. Licensee Standard & Actual Knowledge

We now determine whether there is evidence in the record raising a fact issue about whether TxDOT had actual knowledge that the flushing posed an unreasonable risk of harm.[6] *See Miranda*, 133 S.W.3d at 227–28. As noted above, under a licensee

---

[6] As previously mentioned, we assume without deciding that there is sufficient evidence to raise a fact question on whether the flushing on SH 361 posed an "unreasonable risk of harm." *See Christ*, 664 S.W.3d at 87.

standard of care, the "plaintiff must prove that the governmental unit had actual knowledge of a condition that created an unreasonable risk of harm." *York*, 284 S.W.3d at 847. "[T]he actual knowledge required for liability is of the dangerous condition at the time of accident, not merely of the possibility that a dangerous condition can develop over time." *City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) (per curiam) (quoting *Reyes v. City of Laredo*, 335 S.W.3d 605, 608 (Tex. 2010) (per curiam)). "Awareness of a potential problem is not actual knowledge of an existing danger." *Id.* (quoting *Reyes*, 335 S.W.3d at 609). "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam).

TxDOT argues that there is no evidence showing it had actual knowledge of the dangerous condition. As a preliminary matter, we reiterate that when a defendant challenges the sufficiency of jurisdictional facts, as TxDOT did in its plea to the jurisdiction, the trial court must consider relevant evidence submitted by the parties. *Kirwan*, 298 S.W.3d at 622. As the Texas Supreme Court has stated:

> [W]hen a challenge to jurisdiction that implicates the merits is properly made and supported, whether by a plea to the jurisdiction or by a traditional or no-evidence motion for summary judgment, the plaintiff will be required to present sufficient evidence on the merits of her claims to create a genuine issue of material fact.

*Town of Shady Shores*, 590 S.W.3d at 552. On appeal, appellee refers to factual allegations from her pleadings and urges that TxDOT has "not provided any measurable evidence that contradicts the [appellee's] pleadings." Since TxDOT's plea to the

14

jurisdiction challenged appellee's evidence, appellee cannot rely on the factual allegations in her pleadings as evidence. *See Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818–19 (Tex. 2021) ("[P]leadings generally do not qualify as summary-judgment 'evidence,' even when sworn or verified. Clearly, a party cannot rely on its *own* pleaded allegations as evidence of facts . . . to oppose its opponent's summary-judgment motion." (citation omitted)); *Tex. Tech. Univ. Health Scis. Ctr. v. Enoh*, 545 S.W.3d 607, 612 n.2 (Tex. App.—El Paso 2016, no pet.) ("[F]or the purposes of the plea to the jurisdiction, . . . we do not consider the allegations in the petition . . . as substantive evidence."). Thus, appellee's pleadings cannot raise a fact issue on actual knowledge.

We now look to whether there is competent evidence in the record to raise a fact issue on actual knowledge. Appellee argues that a news article published shortly after the accident contains evidence that TxDOT had actual knowledge of SH 361's defect. However, the trial court signed an order sustaining an objection by TxDOT to the article as inadmissible hearsay, and appellee did not challenge that ruling on appeal. Thus, we are precluded from considering the excluded evidence. *See Brown v. Hensley*, 515 S.W.3d 442, 446 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *McClure v. Denham*, 162 S.W.3d 346, 349 n.2 (Tex. App.—Fort Worth 2005, no pet.) (noting that appellate courts may only consider evidence properly before trial court when reviewing propriety of summary judgment).

Also attached as evidence to TxDOT's plea and appellee's response were the depositions of four TxDOT employees: Charles Benavides, the transportation engineer five at the Alice area office at the time of the accident; Danny Cox, the maintenance

15

section supervisor in Aransas County at the time of the accident; Rickey Dailey, a public information officer at the time of the accident; and Martin Horst, the area engineer for the Corpus Christi area office at the time of the accident. TxDOT contends that "[n]one of these witnesses had any *actual* knowledge that the roadway was slick, much less actual knowledge that the road posed an unreasonable risk of harm at the time and place of the crash." Our review of the depositions confirms that there is no testimony which could raise a fact question on TxDOT's "actual knowledge of an existing danger" posed by flushing on SH 361. *See Paper*, 376 S.W.3d at 767. No employee testified about having been aware of danger posed by flushing on SH 361 or having received complaints about it. *See id.* (noting that the city had received no complaints about a sunken roadway until the plaintiff's accident).

Appellee responds that TxDOT had "actual knowledge of every accident occurring on SH 361." Benavidez testified that after every accident on a TxDOT roadway, TxDOT conducts a District Safety Review of the crashes—a review of the police reports for each crash. TxDOT expert Jeffrey Milburn's preliminary report analyzed 171 police crash reports related to SH 361 that were generated for 2013, 2014, and part of 2015. Milburn's report estimated that the annual traffic volume was approximately 3.4 million vehicles per year for SH 361 and concluded that there was no indication from the crash reports that pavement friction was a contributing factor to the crashes. As Milburn's report states, a frequent reason cited for the crashes was traffic congestion—not issues with flushing. While Benavidez testified TxDOT reviewed each crash report, the reports did not impose "actual knowledge of *an existing danger*" because none of them indicated flushing was a problem. *See Paper*, 376 S.W.3d at 767 (emphasis added); *Tex. Dep't of Transp. v.*

*Padron*, 591 S.W.3d 684, 702 (Tex. App.—Texarkana 2019, pet. denied) (holding that reports of a "large number of accidents" resulting from vehicles "hitting a slick spot in the same stretch" of road demonstrated, among other evidence, actual knowledge); *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam) (explaining that the mere possibility that a dangerous condition can develop over time is not actual knowledge); *City of Edinburg v. Reyna*, No. 13-22-00420-CV, 2023 WL 1831125, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 9, 2023, no pet.) (mem. op.).

Appellee fails to otherwise point to competent evidence, and we have found none, raising a fact question on whether TxDOT had actual knowledge about the flushing. *See Miranda*, 133 S.W.3d at 228. For the reasons stated above, appellee has failed to present evidence supporting a case of premises liability and creating a fact issue on jurisdiction, and TxDOT's immunity was, therefore, not waived. *See* TEX. CIV. PRAC. & REM. CODE § 101.022(a); *Sampson*, 500 S.W.3d at 385. Consequently, the trial court erred by denying TxDOT's plea to the jurisdiction on this issue.[7] *See City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999) (per curiam).

TxDOT's lack of knowledge of SH 361's condition is a jurisdictional fact negating jurisdiction, and this defect is incurable by amendments to appellee's pleadings. Accordingly, appellee is not entitled to an opportunity to amend her pleadings. *See Miranda*, 133 S.W.3d at 226–27. We sustain TxDOT's issue.

## B. Safety Features

Appellee alleged in her petition that, pursuant to § 101.060, TxDOT was negligent in failing to place warning signs reducing the speed limit, warning devices, and rumble

---

[7] We do not address TxDOT's other arguments concerning appellee's premises defect claim because actual knowledge is dispositive of the issue. *See* TEX. R. APP. P. 47.1.

17

strips on the roadway. *See* TEX. CIV. PRAC. & REM. CODE § 101.060. TxDOT asserts that the decision to install certain safety features is a discretionary function for which sovereign immunity is not waived. *See id.* § 101.056.

### 1. Applicable Law

Section 101.056 of the TTCA provides:

> [The TTCA] does not apply to a claim based on:
>
> (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
>
> (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

*Id.* Section 101.056 preserves immunity "for the state's failure to act, when no particular action is required by law." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007). This exception "avoid[s] judicial review or interference with those policy decisions committed to the other branches of government." *Id.*

Section 101.060 is entitled "Traffic and Road Control Devices" and identifies three exceptions to the TTCA's waiver of immunity provisions:

> (a) This chapter does not apply to a claim arising from:
>
> (1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;
>
> (2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or
>
> (3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

18

TEX. CIV. PRAC. & REM. CODE § 101.060(a)(1)–(3).

### 2. Analysis

Appellee argues that the discretionary function exception of § 101.056 does not apply because "TxDOT was in a contractual relationship with the City of Port Aransas for the design, construction, and maintenance of SH 361," TxDOT "failed to implement warning devices within a reasonable time despite being aware of the dangerous conditions present" under § 101.060, and because there was "negligent implementation of policy."

We first address appellee's "negligent implementation of policy" argument. "Negligent implementation of policy is a theory of liability predicated on the distinction between negligent *formulation* of discretionary policy, for which sovereign immunity is preserved, and negligent *implementation* of that same formulated discretionary policy, for which it is not." *City of Mission v. Cantu*, 89 S.W.3d 795, 812 (Tex. App.—Corpus Christ–Edinburg 2002, no pet.) (citing *City of Brownsville v. Alvarado*, 897 S.W.3d 750, 754 (Tex. 1995)). "[T]o state a negligent implementation claim, a plaintiff must identify a particular policy adopted by the governmental unit and state facts which raise a claim that the policy was negligently carried out at the operational level." *Id.* at 813; *Kirstein v. City of South Padre Island*, No. 13-18-00574-CV, 2019 WL 4200298, at *3 (Tex. App.—Corpus Christi–Edinburg Sep. 5, 2019, pet. denied) (mem. op.). Appellee made no such assertions in her petition. Appellee did not allege any negligent implementation of any TxDOT policy, nor did she identify any policy which TxDOT adopted or plead any facts which would demonstrate the violation of such policy. *See Cantu*, 89 S.W.3d at 813; *Mogayzel v. Tex. Dep't of Transp.*, 66 S.W.3d 459, 465–66 (Tex. App.—Fort Worth 2001, pet. denied)

19

("[A]lthough Appellants ple[a]d[ed] that [TxDOT] had notice of [the road's] dangerous condition and failed to correct it within a reasonable time, they have not alleged that the dangerous condition came about through a negligently implemented policy or plan. Rather, Appellants complain of the condition of [the road] as it was *originally designed*."). Moreover, even if a negligent implementation claim had been made, the theory of liability arises only after a plaintiff has properly asserted a waiver of immunity under § 101.021. *Cantu*, 89 S.W.3d at 813 (citing *City of Orange v. Jackson,* 927 S.W.2d 784, 786 (Tex. App.—Beaumont 1996, no writ)). Since appellee failed to do so as discussed above, and the decision to place safety devices is discretionary as discussed below, the theory of negligent implementation liability does not arise in this case. *Id.*

We next address appellee's argument that TxDOT's contractual relationship imposed a legal duty to provide certain safety features on SH 361. Included in appellee's reply to TxDOT's plea was the "Municipal Maintenance Agreement" which covers maintenance and operation of SH 361 and includes the following provisions:

4. The State will erect and maintain all traffic signs and associated pavement marking necessary to regulate, warn, and guide traffic on State highways . . .

. . . .

8. Traffic control devices, such as signs, traffic signals, and pavement markings, with respect to type of device, points of installation and necessity, will be determined by traffic and engineering studies.

TxDOT argues that there is no evidence that it failed to act in accordance with this agreement and no evidence it agreed to install rumble strips. In construing these provisions together, we agree there is no obligation for TxDOT to implement any specific safety features. While TxDOT has the responsibility to "erect and maintain" certain safety

devices on SH 361, the initial decision about what is "necessary" is a discretionary function. *See Fraley v. Texas A & M Univ. Sys.*, 664 S.W.3d 91, 100–01 (Tex. 2023) (holding that the government unit's decision to place a yield sign—rather than a stop sign or other signal—was discretionary and did not waive immunity); *Ramirez*, 74 S.W.3d at 867 (holding immunity was not waived because "the median's slope and the lack of safety features, such as barriers or guardrails, reflect discretionary decisions . . . under the [TTCA's] discretionary-function exception"); *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam) ("Decisions about highway design and about what type of safety features to install are discretionary policy decisions.").

Relatedly, appellee claims that Texas courts utilize a policy versus maintenance test when determining whether government action is discretionary under § 101.056. In *Tarrant Regional Water District vs. Johnson*, the Texas Supreme Court clarified that while "policy-level versus operation-level" and "'design versus maintenance' dichotomy [are] useful way[s] to think about how [§] 101.056 operates," they are nonetheless "not an element of the statute." 572 S.W.3d 658, 666–67 (Tex. 2019). Rather, the touchstone of the statute is discretion. *Id.* Appellee cites to *County of Cameron v. Brown* as support for negligent maintenance. 80 S.W.3d 549 (Tex. 2002). In *Brown*, a driver died after losing control of his vehicle while driving over a bridge without thirty streetlights functioning. *Id.* at 553. The state owned the bridge, but the county was responsible for maintaining the streetlights. *Id.* After the trial court granted the county's plea to the jurisdiction, the court of appeals held that maintenance of the bridge's streetlights was not a discretionary function under § 101.056. *Id.* 553–54. The Texas Supreme Court opined that "while the government is not liable for designing a bridge without lighting, it may be liable for failing

to maintain the lighting on a bridge designed to be illuminated." *Flynn*, 228 S.W.3d at 657–58. Appellee argues that like the county failing to maintain the streetlights, TxDOT's failure to maintain SH 361 likewise waives immunity. However, *Brown* is distinguishable. In *Brown*, the government *designed* the bridge to include lights, and the county was obligated to maintain them. *Brown*, 80 S.W.3d at 553. Here, there is no evidence showing that TxDOT had a policy in place to install rumble strips, warning devices, or warning signs reducing speed limits, nor otherwise failed to maintain them. To the extent appellee argues that such devices should have been placed, it is not for courts to "second-guess a governmental unit's decision about the type of marker or safety device that is the most appropriate." *Rodriguez*, 985 S.W.3d at 85.

We now address appellee's argument that immunity "under § 101.056 'does not apply to claims arising from the absence of a warning device if the government knew of the problem and failed to act within a reasonable time [under TEX. CIV. PRAC. & REM. CODE § 101.060].'" *See Harris County v. Demny*, 886 S.W.2d 330, 332 n.1 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (citing *Zambory v. City of Dallas*, 838 S.W.2d 580, 583 (Tex. App.—San Antonio 1992, writ denied)). However, in *City of Grapevine v. Sipes*, the Texas Supreme Court rejected the idea that immunity is waived if "a governmental unit exercises its discretion in deciding to install a traffic signal, but then fails to implement the decision within a reasonable time" and explained that "[a] traffic signal that never existed—as in this case—cannot serve to put a governmental unit on notice of something needing correction. Both removal and absence [under § 101.060], therefore, presuppose a preexisting device." 195 S.W.3d 689, 694–95 (Tex. 2006). The court further explained:

> *When* the City first installs a traffic signal is no less discretionary than
> *whether* to install it. The timing of implementation could be affected by the

22

governmental unit's balancing of funding priorities, scheduling, traffic patterns, or other matters; to impose liability for the failure to timely implement a discretionary decision could penalize a governmental unit for engaging in prudent planning and paralyze it from making safety-related decisions. This sort of planning and execution is precisely the type of discretionary act for which the TTCA retains immunity.

*Id.* at 694. As discussed above, it is undisputed that TxDOT's decision to install, or not install, certain safety features was discretionary. *See Fraley*, 664 S.W.3d at 100–01; *Ramirez*, 74 S.W.3d at 867; *Miguel*, 2 S.W.3d at 251. Furthermore, any subsequent plans or decisions about installing safety features on SH 361 are "precisely the type[s] of discretionary act[s] for which the TTCA retains immunity." *See Sipes*, 195 S.W.3d at 694.

In conclusion, the claims alleged here arise from discretionary functions that fall within the exceptions provided by §§ 101.056 and 101.060 of the TTCA, for which sovereign immunity is preserved. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.056, 101.060; *Cantu*, 89 S.W.3d at 814. Consequently, the trial court erred by denying TxDOT's plea to the jurisdiction on this issue. *See Bernal*, 986 S.W.2d at 611.

Under the facts of this case, no amendment could possibly cure such a defect in the pleadings, and the claim must be dismissed. *See Olivares*, 316 S.W.3d at 95 (citing *Miranda*, 133 S.W.3d at 227). We sustain TxDOT's issue.

### III.    CONCLUSION

We reverse the trial court's order denying TxDOT's plea to the jurisdiction, render judgment granting TxDOT's plea to the jurisdiction, and dismiss appellee's claims against

23

TxDOT for lack of subject matter jurisdiction based on TxDOT's sovereign immunity.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
19th day of February, 2026.